STANLEY KUSICIEL *et al.*, d/b/a World of Crafts, Plaintiffs-Appellants, *v.* LASALLE NATIONAL BANK, Trustee, *et al.*, Defendants-Appellees.

First District (1st Division)    No. 80-2925

Opinion filed April 26, 1982.

Harry Golter, of Overton, Schwartz & Fritts, Ltd., of Chicago, for appellants.

Peter B. Freeman and Wm. Carlisle Herbert, both of Hopkins & Sutter, of Chicago, for appellees.

PRESIDING JUSTICE CAMPBELL delivered the opinion of the court:

On November 21, 1974, plaintiffs Stanley and Gloria Kusiciel, d/b/a World of Crafts, brought an action in fraud and deceit against defendants LaSalle National Bank as Trustee under Trust No. 40804 (LaSalle), Woodfield Development Corporation (Woodfield), and J. Emil Anderson & Son, Inc. (Anderson). The third amended complaint alleged that fraudulent misrepresentations made by defendants had induced plaintiffs to enter into a commercial lease in a shopping center known as Woodfield Commons in Schaumburg, Illinois. Defendants LaSalle and Anderson, the beneficiary of Trust No. 40804, filed a counterclaim seeking rent and damages for breach of the lease agreement. Plaintiffs filed an answer and affirmative defenses to the counterclaim. The trial court granted defendants' motion for summary judgment on the third amended complaint, denied defendants' motion for partial summary judgment on the counterclaim, and denied plaintiffs' motion for summary judgment on the counterclaim. Plaintiffs abandoned further defense of the counterclaim and a default judgment was entered against them on the counterclaim on the question of liability. After a jury trial on the issue of damages judgment was entered for LaSalle in the amount of $227,333.47.

The issues presented for review are: (1) whether certain false representations made to a prospective tenant of a shopping center were representations of opinion or future promises and therefore not actionable; (2) whether a trial judge can make findings of fact which are contradicted by the record; (3) whether the doctrine of laches or waiver based on plaintiffs' continuation with the contract can be applied to bar an action in fraud and deceit when the action is brought within the statutory period; (4) whether the trial court can consider a motion for summary judgment in a case assigned for immediate trial when consideration of such a motion will take longer than the prospective trial; (5) whether a contract in which one of the parties is exonerated from all liability or responsibility is void for lack of mutuality; and (6) whether the trial court can properly enter a judgment for an amount in excess of that claimed in the counterclaim.

For the reasons set forth herein the judgment of the circuit court is affirmed.

On April 9, 1973, plaintiffs leased Store No. 21 in Woodfield Commons Shopping Center from defendant LaSalle. Plaintiffs occupied the premises from August 18, 1973, until October 31, 1974. The third amended complaint alleged that two employees of Woodfield, the leasing agent of LaSalle and Anderson, made the following representations to plaintiffs during the negotiations for the lease: (1) that Woodfield Commons Shopping Center would be fully rented and all stores open for business no later than October 1973; (2) that M. Hyman & Sons, Sun

Drugs and Gold Standard Liquors would be tenants of the shopping center; (3) that reconstruction work on Golf Road, a primary access point for the Commons, would be completed no later than July 1973; and (4) that plaintiffs would be the only tenants in the shopping center selling arts and crafts supplies during the term of the lease. The third amended complaint also alleged that defendants delivered certain promotional brochures to plaintiffs which depicted a Turn-Style Department Store as constituting a portion of the Commons, although the Turn-Style store was not a part of the shopping center, and that these brochures misled plaintiffs into believing that they were protected from Turn-Style competition in their craft store operation. The third amended complaint further alleged that the representations listed herein induced plaintiffs to execute the lease, that all of these representations were false, that defendants knew that the statements were false when they were made, and that the same or similar misrepresentations were made to other tenants and prospective tenants of the shopping center as part of a plan or scheme to defraud.

Plaintiffs urge that the trial court erroneously held that defendants' misrepresentations were not statements of existing facts and therefore not actionable. Plaintiffs admit that the law in Illinois is that an action for fraud and deceit must be based on a misrepresentation of an existing fact and not an opinion or a promise of future action; however, plaintiffs contend that the four representations complained of were representations which most reasonable men would understand to be representations of existing facts in the context in which the representations were made. Plaintiffs urge that when a leasing agent represents to a prospective tenant that a shopping center will be fully leased by a certain date and that specific tenants will occupy the shopping center, most persons would understand such representations to mean that the center was fully leased and that specific tenants had signed leases, and that these interpretations relate to existing facts. Plaintiffs rely on *Buttitta v. Lawrence* (1931), 346 Ill. 164, 178 N.E. 390, and *Perlman v. Time, Inc.* (1978), 64 Ill. App. 3d 190 380 N.E.2d 1040, in support of their position. In *Buttitta* the plaintiffs, who could not read or write English, were induced by defendants whom they did not know to exchange the deed to their residential property for a deed to a vacant lot owned by one of the defendants plus some worthless promissory notes which they had not seen and which were all past due. The court held that whether the representation that commercial paper is "good" is a statement of opinion or of a material fact may depend upon the circumstances, and that under the circumstances existing therein, if defendants asserted that the notes were good, such was an assertion of fact that the makers were responsible and the notes collectible.

In *Perlman* plaintiff agreed to a substitute subscription to Time mag-

azine when defendant ceased publication of Life magazine. Plaintiff received 43 issues of Time magazine in exchange for the 60 remaining issues of Life magazine that he was entitled to under his Life Magazine subscription, and he brought suit against defendant alleging that he had not received full value. In setting aside a summary judgment in favor of the defendant, the court, citing *Buttitta*, held that whether a statement is one of fact or opinion depends upon the circumstances of each case, and that statements of value are common examples.

Plaintiffs further urge that even if the misrepresentations were promises or expressions of future intention, they were part of a scheme or plan to defraud and therefore actionable as an exception to the general rule stated above. (*Steinberg v. Chicago Medical School* (1977), 69 Ill. 2d 320, 371 N.E.2d 634; *Roda v. Berko* (1948), 401 Ill. 335, 81 N.E.2d 912.) In the *Steinberg* case plaintiff alleged that defendant stated in its catalog that it would evaluate applicants according to certain academic criteria, but that defendant actually evaluated applicants according to the ability of the applicant or his family to pledge or make payments of large sums of money to the school, and that plaintiff had relied on the statements in the catalog to his detriment. The court held that the allegations supported a cause of action for fraud, and that although the general rule denies recovery for fraud based on a false representation of intention or future conduct, there is a recognized exception where the false promise or representation of future conduct is alleged to be the scheme employed to accomplish the fraud.

Defendants urge that the trial court correctly found that defendants made no fraudulent misrepresentations to plaintiffs. In advancing this position defendants cite *Soules v. General Motors Corp.* (1980), 79 Ill. 2d 282, 402 N.E.2d 599, wherein the Illinois Supreme Court listed the elements of a cause of action for fraudulent misrepresentation as follows:

> "(1) false statement of material fact (2) known or believed to be false by the party making it; (3) intent to induce the other party to act; (4) action by the other party in reliance on the truth of the statement; and (5) damage to the other party resulting from such reliance. * * * Furthermore, the reliance by the other party must be justified, *i.e.*, he must have had a right to rely." (79 Ill. 2d 282, 286, 402 N.E.2d 599, 601.)

Defendants claim that even if the statements were made during lease negotiations, they cannot be characterized as fraudulent misrepresentations because they do not satisfy the elements set forth in *Soules*.

Defendants contend that the statements that the shopping center would be fully rented by October 1973, that M. Hyman & Sons, Sun Drug and Gold Standard Liquors would be tenants, and that reconstruction of Golf Road would be completed by July 1973 were all predictions or

stated expectations of future events, and must be interpreted as such and not as plaintiffs would have this court interpret them. Moreover, defendants contend that Stanley Kusiciel admitted in his deposition that defendants had not told him that all of the stores would be leased by October 1973 or that these particular businesses had signed leases for space in the shopping center. Defendants claim that they did not know that the statements were false when made, and that plaintiffs did not have a right to rely on these three statements because they were representations of future events which were not within the complete control of defendants (*Zaborowski v. Hoffman Rosner Corp.* (1976), 43 Ill. App. 3d 21, 356 N.E.2d 653), and that plaintiffs had ample opportunity to verify the truth of the representations. *Broberg v. Mann* (1965), 66 Ill. App. 2d 134, 213 N.E.2d 89.

■■ In *Zaborowski* plaintiffs-homeowners sued defendant-land developer alleging fraud and deceit to enjoin defendant from developing its remaining property across the street for other than single-family purposes. Plaintiffs argued that the false representation that single family dwellings would be constructed on the land was part of a scheme used to accomplish the fraud of inducing plaintiffs to purchase their respective homes. The appellate court rejected this argument and affirmed the judgment dismissing the complaint. In so doing the court held that a promise to perform an act even though the party intends not to perform is an insufficient false representation to constitute fraud. In order to constitute fraud the representation must be an affirmance of fact and not a mere promise or expression of opinion or intention, and a representation merely boosting the property relating what will happen in the future does not amount to actionable fraud. In *Broberg* plaintiff purchased land from defendant believing that it contained 26 acres when it in fact contained only 18 acres. In reversing judgment for plaintiff the appellate court held that if by the exercise of ordinary prudence, a party has ample opportunity to determine the truth of the representations before acting, but fails to do so, he is charged with knowledge and may not be heard to say his loss was due to the deceit of another.

Defendants also contend that the representation that plaintiffs would be the sole craft store at the shopping center during the term of their lease was a promise which was incorporated into their lease and that this promise was kept and that plaintiffs do not allege that they were not the sole craft store at the shopping center during the term of their lease. Defendants further claim that despite plaintiffs' claim that they were misled by a brochure which showed a Turn-Style Department Store on the shopping center premises, which operated a crafts department during a portion of plaintiffs' tenancy, Stanley Kusiciel admitted in his deposition that he had reviewed the lease carefully before he signed it, that the shopping center was defined in the lease on a map attached to the lease as

Exhibit "A", and that he knew the Turn-Style Department Store was outside the area defined on the map as the shopping center. Defendants urge that plaintiffs were not justified in relying on a misrepresentation as to the terms of a contract which they had been afforded an opportunity to read. *Hurley v. Frontier Ford Motors, Inc.* (1973), 12 Ill. App. 3d 905, 299 N.E.2d 387.

The purpose of the summary judgment procedure is to render expeditious judgment on a question of law, after first deciding that no genuine issue as to any material fact exists between the parties. (*Sheehan v. Janesville Auto Transport* (1981), 102 Ill. App. 3d 507, 430 N.E.2d 131.) This is to be determined by the trial court from the pleadings, depositions, affidavits, and exhibits in each case. (*Littrell v. Coats Co.* (1978), 62 Ill. App. 3d 516, 379 N.E.2d 293.) A defendant may at any time move for a summary judgment in his favor for all or any part of the relief sought against him. (Ill. Rev. Stat. 1977, ch. 110, par. 57(2).) In the interpretation of the pleadings, the movant's motion for summary judgment and its supporting documents must be strictly construed and must leave no question as to the movant's right to judgment; conversely, in considering the motion, the respondent's counteraffidavits and supporting documents must be liberally construed. *Littrell v. Coats Co.*

The record before us discloses that the trial court had before it and did consider all of the documents and exhibits submitted to it by the parties in support and in opposition to the various motions for summary judgment. In granting defendants' motion for summary judgment on the third amended complaint the court found that the representations that the shopping center would be fully rented and all stores open for business no later than October 1973, that M. Hyman & Sons, Sun Drugs and Gold Standard Liquors would be tenants of the shopping center, and that the reconstruction work on Golf Road would be completed no later than July 1973, all related to events that were to occur in the future and which were not within the control of defendants. The court found that these representations were not promises made without any intention of performing them but instead were predictions of events that depended in essential part on the conduct of others, and were not a proper basis for a charge of fraud. (*Steinberg v. Chicago Medical School; Roda v. Berko; Broberg v. Mann.*) The trial court further found that plaintiffs' reliance on *Steinberg* and *Roda* was based on promises made by defendants therein, the performance of which was within the exclusive control of the respective defendants, contrary to the representations on which the instant action is based.

With respect to the representation that plaintiffs would be the only tenants in the shopping center selling arts and crafts supplies during the term of the lease, the trial court found that plaintiffs had taken the lease

home and studied it before signing, and that the lease depicted a property line between the property defendants were leasing and the Turn-Style store. Plaintiffs did not allege that there were any other crafts stores in the shopping center, and contrary to the allegation of plaintiffs that they would be the only tenants in the shopping center selling arts and crafts supplies, the lease specifically provided that plaintiffs would be the sole crafts store at the shopping center. The trial court found that plaintiffs were not entitled to claim that they were deceived about the scope of the provision in the lease limiting competition when the scope of that provision was clearly set forth in the lease. (*Hurley v. Frontier Ford Motors, Inc.*) The trial court then concluded that this representation was not a proper basis for a charge of fraud. (*Hurley v. Frontier Ford Motors, Inc.*) We have reviewed the record and the authorities cited by the parties, and we agree with defendants that the trial court did not err in entering a summary judgment for defendants on the third amended complaint based upon a finding that no genuine issue as to any material fact existed between the parties and that as a matter of law plaintiffs' complaint did not support an action for fraud. (*Steinberg v. Chicago Medical School*; *Zaborowski v. Hoffman Rosner Corp.*; *Broberg v. Mann*; *Hurley v. Frontier Ford Motors, Inc.*) In light of the opinion expressed herein we find it unnecessary to pass on the second, third, and fourth issues raised by plaintiffs.

Plaintiffs' fifth contention is that the lease agreement was void for lack of mutuality. This argument was advanced by plaintiffs as their fourth affirmative defense to defendants' counterclaim. Plaintiffs assert that the exculpatory clause which was affixed to the lease as a rider negated any responsibility on the part of the trustee to fulfill any affirmative covenants under the lease. There is no basis in the written lease for a claim against the trustee in any capacity, and the lease purports to exclude any recourse except such recourse as the lessee might have to the premises, namely a small store (No. 21) totalling 5,250 square feet.

Defendants respond by claiming that plaintiffs concede that a trustee can enter into a contract with a third party for the benefit of the trust estate, binding the trust but not the trustee personally. *Schumann-Heink v. Folsom* (1927), 328 Ill. 321, 159 N.E. 250; *Miller v. Racine Trust* (1978), 65 Ill. App. 3d 207, 216, 382 N.E.2d 41, 48; *Elmore Real Estate Improvement Co. v. Olson* (1947), 332 Ill. App. 475, 481, 76 N.E.2d 204, 207; *Empire Fire Proofing Co. v. Comstock* (1905), 121 Ill. App. 518, 527.

■▉ The rider limited recourse by the tenant to the premises leased for payment of any liability occurring under the lease. Plaintiffs have not cited any authority to suggest that the power to limit recourse by plaintiffs to only a portion of the trust assets renders the lease void for lack of mutuality, nor has plaintiff made a convincing showing to support the

contention that the asset which was exposed by agreement to plaintiffs' claims was not adequate to provide an effective means of enforcing the landlord's covenants. Parties may agree to limit liability under a contract to a particular fund, and there is no reason to require a trustee to include all the assets of the trust in the fund. (*Schumann-Heink v. Folsom.*) The trial court ruled that if the trustee lacked power to limit recourse by plaintiffs to the leased premises, then any of the trust assets would be available to satisfy their claims.

■ We are not persuaded by the contention of plaintiffs that the lease is unenforceable for lack of mutuality, and plaintiffs' admitted failure to participate in any further court proceedings after the entry of the order for summary judgment for defendants and the denial of plaintiffs' motion for summary judgment on the counterclaim has not aided their cause. We do not have a compelling reason or legal authority to accept the contention of plaintiffs that the lease was unenforceable for lack of mutuality, and we must conclude that the ruling of the trial court was proper in this regard and the cases cited by plaintiffs may be distinguished on the facts.

■ Plaintiffs' final argument claims that the court erroneously entered a judgment for an amount in excess of the amount in LaSalle's counterclaim. Plaintiff chose to ignore and refused to participate in these proceedings after 1979, when defendants' motion for summary judgment was allowed and plaintiffs' motion for summary judgment on defendants' counterclaim was denied. The trial court noted in the default judgment entered on August 15, 1980, as to liability on the counterclaim of LaSalle, that no one had appeared on behalf of plaintiffs since November 13, 1979, despite several hearings during 1980 and notice to plaintiffs' counsel. The counterclaim upon which LaSalle based its action sets forth a claim for damages for unpaid rent, interest, reasonable attorney fees and costs and plaintiffs were aware of said claim. Plaintiffs abandoned further participation in the proceedings and facilitated the necessity of *ex parte* hearings. Plaintiffs contributed greatly to the entry of the default judgment, and we must accept defendants' position that plaintiffs have waived this issue on appeal and these matters should have been raised in the first instance in the trial court and not on appeal.

For the foregoing reasons, we affirm the judgment of the circuit court of Cook County.

Judgment affirmed.

GOLDBERG and McGLOON, JJ., concur.