HPI HEALTH CARE SERVICES, INC., Plaintiff-Appellant, v. MT. VERNON HOSPITAL, INC., *et al.*, Defendants-Appellees.

Fifth District   No. 5—87—0400

Opinion filed July 29, 1988.

KARNS, J., dissenting.

Arnstein, Gluck, Lehr & Milligan, of Chicago, and McRoberts, Sheppard, Wimmer & Stiehl, P.C., of Belleville (Arthur L. Klein, John T. Wagener, and William D. Stiehl, Jr., of counsel), for appellant.

Joseph J. Trad, of Lewis & Rice, of St. Louis, Missouri, for appellee Centerre Trust Company of St. Louis.

Freeark, Harvey, Mendillo & Dennis, P.C., of Belleville (Ted Harvey, Jr., and Ransom P. Wuller, of counsel), for appellees National Medical Health Care Services, Inc., and National Medical Enterprises, Inc.

John B. Gunn, James C. Cook, and Lisa M. Pennock, all of Walker & Williams, P.C., of Belleville, for appellee Hospital Management Associates, Inc.

PRESIDING JUSTICE HARRISON delivered the opinion of the court:

Plaintiff, HPI Health Care Services, Inc. (HPI), appeals from that portion of a judgment of the circuit court of Jefferson County which dismissed counts IV, VI, VII, and VIII of its second amended complaint. The circuit court's judgment of dismissal was entered pursuant to section 2—615 of the Code of Civil Procedure (Ill. Rev. Stat. 1985, ch. 110, par. 2—615), and the question presented for our review is whether the aforementioned counts were substantially insufficient in law. For the reasons, which follow, we reverse and remand for further proceedings.

A motion to dismiss brought pursuant to section 2—615 of the Code of Civil Procedure (Ill. Rev. Stat. 1985, ch. 110, par. 2—615) attacks only the legal sufficiency of the complaint. (*Longust v. Peabody Coal Co.* (1986), 151 Ill. App. 3d 754, 756, 502 N.E.2d 1096, 1097.) A complaint may survive a motion to dismiss if the facts alleged state a

cause of action and the complaint "reasonably informs the opposite party of the nature of the claim \*\*\* which he or she is called upon to meet." (*Glazewski v. Coronet Insurance Co.* (1985), 108 Ill. 2d 243, 249, 483 N.E.2d 1263, 1265-66, quoting Ill. Rev. Stat. 1983, ch. 110, par. 2—612(b).) In assessing the sufficiency of a complaint, the court must accept all facts well pleaded as true and draw all reasonable inferences therefrom in favor of the nonmoving party. (*Prudential Insurance Co. of America v. Van Matre* (1987), 158 Ill. App. 3d 298, 301, 511 N.E.2d 740, 742.) A complaint should not be dismissed under section 2—615 for failure to state a cause of action or for insufficiency at law unless, clearly, no set of facts could be proven under the pleadings which would entitle the plaintiff to relief. *Iverson v. Scholl, Inc.* (1985), 136 Ill. App. 3d 962, 965, 483 N.E.2d 893, 896.

According to plaintiff's second amended complaint, defendant Mt. Vernon Hospital, Inc. (Mt. Vernon Hospital), entered into a lease or financing agreement with Jefferson County Health Facilities Authority, Inc. (Jefferson County), on or about July 1, 1980, pursuant to which Jefferson County agreed to lease a combined hospital-nursing home facility in Mt. Vernon, Illinois, to defendant Mt. Vernon Hospital. To finance the acquisition, renovation, and conversion of the hospital-nursing home facility by defendant Mt. Vernon Hospital, Jefferson County issued bonds. Defendant Centerre Trust Company of St. Louis (Centerre) was the trustee of those bonds under an "Indenture Mortgage and Deed of Trust" dated July 1, 1980 (the Indenture). Under the terms of the Indenture, all rental payments made by defendant Mt. Vernon Hospital pursuant to the financing agreement with Jefferson County were to be remitted directly to defendant Centerre for the account of Jefferson County, deposited in a trust fund designated "Jefferson County Health Facilities Authority, Inc. (Mt. Vernon Hospital, Inc.) Bond Fund for First Mortgage Medical Facilities Revenue Bonds" and used "to pay the principal of, premium, if any, and interest on the Bonds."

On or about August 1, 1980, defendant Mt. Vernon Hospital entered into a contract with defendant Hospital Management Associates, Inc. (HMA). Under that contract HMA agreed to provide management services for the hospital and, among other things, to

> "deposit in the Hospital's respective bank accounts \*\*\* all receipts and monies arising from the operation of the Hospital or otherwise received by HMA for and on behalf of the Hospital \*\*\* and shall disburse and pay the same from said accounts on behalf and in the name of the Hospital \*\*\* in such amounts and at such times as the same are required. HMA shall be permit-

ted to draw these funds only to pay the reasonably necessary expenses of the operation of the Hospital. HMA shall be responsible for the payment, from [Mt. Vernon Hospital's] funds, before the payment of any other obligation of the Hospital, of such payments as are required to be made under the Lease and the Indenture, and all other contractual obligations, entered into with respect to the Bonds, in such amounts and at such times as the same are required."

On or about January 7, 1981, defendant Mt. Vernon Hospital entered into a "Pharmaceutical Services Agreement" with plaintiff under which plaintiff was to provide pharmaceutical services and supplies for the operation of the hospital. One of the signatories to the agreement was Edward L. Holley, the hospital administrator, who was an agent and employee of defendant HMA. The hospital opened for business shortly thereafter, and plaintiff began providing the pharmaceutical goods and services required by its agreement with the hospital.

The complaint suggests that the hospital began experiencing serious financial difficulties during the months which followed. On or about October 1, 1981, defendant Centerre contacted an individual named Michael A. Alexander and requested that he assume the positions of chairman of the board and trustee on the board of trustees of the hospital. Alexander accepted those positions. Thereafter, a new management company was retained to replace HMA in the operation of the hospital. HMA's management obligations were ultimately assumed by defendants National Medical Health Care Services, Inc., and National Medical Enterprises, Inc. (collectively, National Medical), pursuant to an agreement executed on or about July 1, 1982. The defendant hospital's agreement with National Medical provided, among other things, that

"[i]n accordance with policies to be established by the Hospital, [National Medical] shall deposit all receipts and money arising from the operation of the facility or otherwise received by [National Medical] on behalf of Hospital, and shall make disbursements from the accounts on behalf of Hospital and facility in such amounts and at such times as the same are required. Signatories and approvals as to the amounts on all checks shall be in accordance with the duly adopted policy of Hospital ***."

The contract further provided that "[t]he parties acknowledge[d] that the cooperation of the Trustee is essential to the financial viability of the facility."

Plaintiff continued to provide pharmaceutical goods and services

to defendant Mt. Vernon Hospital under the terms of its original agreement even after the management companies changed. These goods and services were, in turn, resold by the hospital to its patients. Plaintiff, however, never received one cent in payment. Instead, all revenues generated by the hospital, including the revenues from the resale of goods and services provided by plaintiff to the hospital's patients, were paid over by defendants HMA and National Medical to defendant Centerre (pursuant to the terms of the indenture and financing agreements) or to the hospital's other creditors. When the hospital's debt to plaintiff reached nearly $1 million, this litigation commenced.

Plaintiff's second amended complaint contained nine counts. Count I sought recovery against defendant Mt. Vernon Hospital for breach of the January 7, 1981, pharmaceutical services agreement. Count II sought recovery from defendant HMA based on negligence. Counts III and V were directed, respectively, at HMA and National Medical and sought recovery for breach of contract based on a third-party beneficiary theory. Counts IV and VI directed, respectively, against HMA and National Medical, alleged tortious interference with contract. Count VII sought recovery from defendant Centerre based on unjust enrichment. Count VIII asserted claims against all of the defendants based on fraudulent misrepresentation, while count IX alleged that each of the defendants had committed mail and wire fraud and engaged in a pattern of racketeering activity in violation of Federal law.

On May 4, 1987, the circuit court entered a default judgment in favor of plaintiff and against defendant Mt. Vernon Hospital on count I of the second amended complaint in the amount of $1,691,792.04. The following day, May 5, 1987, the circuit court entered an order dismissing all of the remaining counts of the second amended complaint. That order was entered based on motions to dismiss which had previously been filed by defendants HMA, National Medical, and Centerre. Although not all of those motions specified the statutory provision under which they were brought, they each argued that the complaint failed to state a cause of action. That is a matter properly raised under section 2—615 of the Code of Civil Procedure (Ill. Rev. Stat. 1985, ch. 110, par. 2—615) (*Longust v. Peabody Coal Co.* (1986), 151 Ill. App. 3d 754, 756, 502 N.E.2d 1096, 1097), and there seems to be no serious dispute that the circuit court's dismissal order was premised upon that provision. Rather than seek to amend its complaint again, plaintiff elected to stand on its pleadings. This appeal followed.

■ Before addressing the appeal on its merits, there are two pre-

liminary matters which we must address. First, the briefs submitted on behalf of defendants Centerre and National Medical exceed the page limitations imposed by Supreme Court Rule 341(a) (113 Ill. 2d R. 341(a)). That rule expressly provides:

> "Unless authorized by order of the reviewing court or a judge thereof, the appellant's brief and the appellee's brief, excluding only those matters required by Rule 342(a) to be appended thereto, shall each be limited to 50 pages if printed, or 75 pages if not printed ***." 113 Ill. 2d R. 341(a).

Centerre and National Medical have each submitted briefs which are not printed, but their briefs are substantially longer than the 75 pages permitted. In each case, the excess text consists of documents from the record which have been appended as exhibits. The brief submitted on behalf of defendant Centerre, which was prepared by the St. Louis, Missouri, law firm of Lewis & Rice, contains no fewer than 10 such exhibits. With these exhibits, Centerre's brief appears to be slightly more than 50% as long as the entire common law record itself.

Neither Centerre nor National Medical was given leave by this court or by any judge of this court to file a brief longer than Supreme Court Rule 341 (113 Ill. 2d R. 341) permits, and, as appellees, they cannot justify inclusion of the excess materials based on Supreme Court Rule 342(a), which concerns those matters which must be included as an appendix to the appellant's brief. Apparently, Centerre and National Medical have appended these additional exhibits to their briefs because they feel that the record which has been prepared and transmitted to this court is incomplete. We note, however, that neither party has ever moved to supplement the record, and a motion to strike the record on appeal for failure to comply with Supreme Court Rule 321 (107 Ill. 2d R. 321) was previously denied by this court.

The exhibits submitted by defendant Centerre are objectionable for another reason. As we have indicated, this appeal is limited solely to the question of a legal sufficiency of plaintiff's second amended complaint. With the exception of the pharmaceutical services agreement between plaintiff and defendant Mt. Vernon Hospital, which was attached to that complaint, the exhibits submitted by Centerre have no possible bearing on this issue. Those exhibits include such matters as earlier versions of the complaint, interrogatories and answers to interrogatories, the cover pages from two depositions, and certain documentary evidence. Putting aside the question of page limitations, such materials have no proper place on this appeal. In our view, they merely illustrate a basic principle which Centerre has apparently

failed to comprehend, namely, that a defendant cannot prevail on a motion to dismiss by adducing evidence which merely negates the factual allegations on which the plaintiff's claim is based. If Centerre believed that plaintiff here could not prove its factual allegations, that no genuine issue of material fact existed, and that it was entitled to judgment as a matter of law, then what it should have filed is a motion for summary judgment (see Ill. Rev. Stat. 1985, ch. 110, par. 2—1005), not a motion to dismiss for failure to state a cause of action. See *Longust v. Peabody Coal Co.* (1986), 151 Ill. App. 3d 754, 757, 502 N.E.2d 1096, 1098.

Disregard for Supreme Court Rules 341 and 342 dilutes the effectiveness of an appeal and cannot be condoned. (See *Curtis v. Birch* (1983), 114 Ill. App. 3d 127, 132, 448 N.E.2d 591, 595.) While the plaintiff in this case has allowed the violations by Centerre and National Medical to pass without objection, counsel are admonished that future violations may result in their briefs being stricken by this court on its own motion.

■ Centerre and National Medical are not the only parties to this proceeding guilty of making a procedural error. Plaintiff has also made a mistake, although it is a far less extreme one, and this brings us to the second preliminary matter we must consider before addressing the appeal on its merits. Plaintiff's notice of appeal provides:

> "HPI HEALTH CARE SERVICES, INC. hereby appeals to the Appellate Court of Illinois for the Fifth Judicial District, from the Order entered by the Circuit Court of the Second Judicial Circuit, Jefferson County, Illinois, in which the Court dismissed Counts II through IX of plaintiff's Second Amended Complaint.
>
> HPI HEALTH CARE SERVICES, INC. prays that the Circuit Court be reversed, that the Order of the Court entered May 4, 1987, be vacated, and that the cause be remanded with instructions to the Circuit Court that the defendant be ordered to answer the Second Amended Complaint filed by HPI HEALTH CARE SERVICES, INC."

This notice is not correct. The circuit court's order of May 4, 1987, concerned the default judgment entered in favor of plaintiff and against defendant Mt. Vernon Hospital, not the order dismissing counts II through IX of the second amended complaint, which is the subject of this appeal. That order, as we have noted, was actually entered the following day, May 5, 1987.

Defendant HMA argues that because of this error in the notice, our court lacks jurisdiction to consider plaintiff's appeal. We disagree.

While the filing of a proper notice of appeal is jurisdictional, the appellate court is not necessarily deprived of jurisdiction where a deficiency in the notice is one of form only and not of substance. The absence of strict technical compliance with the form of the notice is not fatal where, considered as a whole, the notice fairly and adequately sets out the judgment complained of and the relief sought so that the successful party is advised of the nature of the proceedings. (*First National Bank v. City of Aurora* (1976), 41 Ill. App. 3d 326, 330, 353 N.E.2d 309, 312, *rev'd on other grounds* (1978), 71 Ill. 2d 1, 373 N.E.2d 1326.) Such is the case here.

The body of the notice expressly states that it is addressed to the order dismissing counts II through IX of the second amended complaint. Correspondingly, the prayer for relief asks that the cause be remanded with instructions that defendants be ordered to answer the second amended complaint. In light of this explicit language, and given that plaintiff was the prevailing party on count I of the complaint under the judgment entered by the circuit court on May 4, 1987, we fail to see how defendants could reasonably have understood the notice to be directed to anything other than the order of May 5, 1987, in which counts II through IX of the second amended complaint were dismissed for failure to state a cause of action. While defendant HMA professes to have been confused, its arguments are strained, and we shall not allow it to elevate what is essentially a typographical error into a jurisdictional impediment.

Although the notice of appeal referred generally to the dismissal of counts II through IX of the second amended complaint, plaintiff has now abandoned any claim of error except as to the dismissal of counts IV, VI, VII, and VIII. Having determined that the order dismissing those counts is properly before us for review, we now turn to the question of whether dismissal of those counts for failure to state a cause of action was proper. We hold that it was not.

■ Count IV of plaintiff's complaint, directed against defendant HMA, and count VI, directed against defendant National Medical, are each premised on the theory of tortious interference with contract. The essential elements of this tort are: "(1) the existence of a valid and enforceable contract between the plaintiff and another; (2) the defendant's awareness of this contractual relation; (3) the defendant's intentional and unjustified inducement of a breach of the contract; (4) a subsequent breach by the other, caused by the defendant's wrongful conduct; and (5) damages." (*Prudential Insurance Co. of America v. Van Matre* (1987), 158 Ill. App. 3d 298, 304, 511 N.E.2d 740, 744.) Although some formulations of the cause of action include "malice" as

a necessary element, "malice" in this context means only the intent to interfere without sufficient justification. 158 Ill. App. 3d at 305, 511 N.E.2d at 744.

■■ With respect to defendant HMA, count IV of plaintiff's complaint does allege: (1) that plaintiff entered into a pharmaceutical services agreement with a third party, namely, Mt. Vernon Hospital, on January 7, 1981; (2) that HMA had "knowledge of the existence of and contents of said contract" in that the hospital administrator, who was one of the parties who signed the agreement, was an agent and employee of HMA; (3) that HMA "intentionally" and "without legal justification" induced a breach of the pharmaceutical goods and services contract between plaintiff and Mt. Vernon Hospital when it "knowingly and intentionally caused the receipts and funds of Mt. Vernon Hospital to be paid over to third persons and knowingly and intentionally caused no payments of the amounts due and owing to plaintiff by Mt. Vernon Hospital under the terms of the pharmaceutical services agreement to be made to plaintiff," and that the "knowing and intentional decision of [HMA] not to make payments to plaintiff on behalf of Mt. Vernon Hospital but instead to make payments to other providers of goods and services to Mt. Vernon Hospital and other creditors was made willfully, wantonly, recklessly and in conscious disregard of plaintiff's right to be paid for the provision of its goods and services under the pharmaceutical services agreement"; (4) that the pharmaceutical services agreement was breached; and (5) that as "a direct and proximate result of [HMA's] intentional interference with the pharmaceutical services agreement ***, plaintiff has sustained damages in the sum of Nine Hundred Fifty-Five Thousand Four Dollars and Seventy-Five Cents ($955,004.75) plus interest." The allegations made against defendant National Medical in count VI are essentially the same, although no claim is made that an agent of National Medical actually signed the pharmaceutical services agreement between plaintiff and Mt. Vernon Hospital.

There can be no serious dispute that the foregoing allegations set forth each of the basic elements necessary to sustain a cause of action against defendants HMA and National Medical for tortious interference with contract. Defendant HMA nevertheless contends that count IV, in which it was named as a defendant, was properly dismissed by the circuit court. HMA advances several arguments in support of this contention. When attempting to characterize these arguments in its reply brief, plaintiff used the word "bizarre." In our view, this adjective may not be wholly inappropriate.

For example, defendant HMA seems to suggest that what plain-

tiff is really trying to do in count IV is obtain recovery under the theory that it was a third-party beneficiary of the management contract between defendant HMA and Mt. Vernon Hospital, a position which HMA regards as untenable. While it is true that plaintiff did seek recovery from defendant HMA based upon its status as a third-party beneficiary under HMA's management contract with Mt. Vernon Hospital in count III of its second amended complaint, plaintiff has elected not to pursue on appeal the dismissal of that count, and plaintiff's possible status as a third-party beneficiary is irrelevant to its alternate theory of recovery for tortious interference with contract, which is the subject of count IV.

Defendant HMA next asserts in its brief:

> "[W]e know from plaintiff's own agreement with Mt. Vernon Hospital, Inc. that the obligations of Mt. Vernon Hospital, Inc. under its pharmaceutical services agreement with plaintiff could not be assigned by Mt. Vernon Hospital to any other party without prior written consent of plaintiff (C.61 (Section 6.9)[.]) Nowhere in count IV has plaintiff alleged any such assignment. Furthermore, we know from section 6.16 of plaintiff's own pharmaceutical services agreement with Mt. Vernon Hospital that '*** HPI shall be entitled to no benefits with respect to such pharmaceutical services operation other than those specified herein and in the schedules hereto.' (C.62 [.])"

Having made these observations, defendant HMA does not explain what relevance they have to plaintiff's allegations of tortious interference with contract under count IV. Instead, defendant HMA simply concludes, "Plaintiff's claims against this defendant in *count II*, thus, are utterly inconsistent with the limitations of its own pharmaceutical services agreement with Mt. Vernon Hospital." (Emphasis added.) As with count III, count II is not before us on this appeal, and we fail to see how any deficiencies in that count justify the circuit court's dismissal of count IV.

The third argument made by defendant HMA is that count IV was properly dismissed because Illinois does not recognize liability for negligent interference with contract. Once again, however, HMA has ignored the clear import of that count. As our previous discussion has indicated, negligence plays no role in plaintiff's theory of recovery under count IV; rather, that count specifically alleges that defendant HMA knowingly and intentionally induced the breach of plaintiff's contract with Mt. Vernon Hospital.

A fourth, and related, argument made by defendant HMA is that count IV was properly dismissed because the damages sought by

plaintiff in that count consisted of purely economic losses resulting from the defeated expectations of a commercial bargain and such economic losses cannot be recovered in a tort action. In support of this claim, defendant HMA cites *Anderson Electric, Inc. v. Ledbetter Erection Corp.* (1986), 115 Ill. 2d 146, 503 N.E.2d 246. That case, however, concerned a cause of action based on negligence, not, as in the matter before us, tortious interference with contract. Where a cause of action is brought based on tortious interference with contract, economic losses are the damages recoverable. *Santucci Construction Co. v. Baxter & Woodman, Inc.* (1986), 151 Ill. App. 3d 547, 553, 502 N.E.2d 1134, 1139.

A fifth argument made by defendant HMA is that count IV was properly dismissed because plaintiff nowhere alleged that defendant had as its purpose the interference with plaintiff's contract with Mt. Vernon Hospital when it caused payments to be made to Centerre and others but not plaintiff. This allegation, however, was not required. Although the court in *Parkway Bank & Trust v. City of Darien* (1976), 43 Ill. App. 3d 400, 357 N.E.2d 211, affirmed the dismissal of a count in a complaint which did not include such an allegation, that count alleged tortious interference with prospective business advantage. The count before us in this case alleges tortious interference with an *existing* contract. Where, as here, the alleged interference is with an existing contract, a plaintiff may recover even though the defendant did not act for the purpose of interfering with the contract or desire it. See 43 Ill. App. 3d at 403 n.2., 357 N.E.2d at 215 n.2; Restatement (Second) of Torts §766, comment *j*, at 12 (1979).

The final argument made by defendant HMA in support of dismissal of count IV is that it was justified in acting as it did. According to our supreme court, the question of justification rests on whether protection of the particular contractual interest at issue merits prohibition of the particular conduct being challenged. (*Swager v. Couri* (1979), 77 Ill. 2d 173, 190, 395 N.E.2d 921, 928.) Thus, it has been held:

> "Under certain circumstances a third party may be privileged purposely to bring about a breach of contract between other parties. This privilege occurs where the third party acts to protect a conflicting interest which is considered to be of equal or greater value than that accorded the contractual rights involved." *Schott v. Glover* (1982), 109 Ill. App. 3d 230, 234, 440 N.E.2d 376, 379.

Here, we cannot say that the existence of such a privilege is evident from the face of the complaint. Unlike *Schott v. Glover* (1982),

109 Ill. App. 3d 230, 440 N.E.2d 376, which has been cited by HMA, no attorney-client relationship is present. Nor does this case involve the actions of fellow employees (see *Salaymeh v. InterQual, Inc.* (1987), 155 Ill. App. 3d 1040, 508 N.E.2d 1155) or the efforts of corporate officers, directors, or shareholders to influence the actions of their corporations (see *Swager v. Couri* (1979), 77 Ill. 2d 173, 395 N.E.2d 921; *Worrick v. Flora* (1971), 133 Ill. App. 2d 755, 272 N.E.2d 708).

Under the allegations of plaintiff's complaint, the only possible basis for justifying defendant HMA's actions in inducing the breach of plaintiff's pharmaceutical services agreement with the Mt. Vernon Hospital is the management contract which HMA had with the hospital. HMA's management contract, however, obligated it to pay out of hospital funds the reasonably necessary expenses of the operation of the hospital. To be sure, the management contract also provided that HMA first had to make such payments as might be required under the lease and indenture and all other obligations entered into with respect to the bonds before making payment of any other obligations of the hospital. Nevertheless, even assuming, *arguendo*, that such a condition was sufficient as a matter of law to justify nonpayment to plaintiff when no money was left after bond-related expenses were met, nothing in count IV suggests that such a circumstance was present here. To the contrary, the complaint specifically avers that HMA did decide to make payments to other providers of goods and services. The obvious implication is that money was available to meet at least some of the hospital's operating expenses. According to the complaint, defendant HMA simply decided that this money should not be paid to plaintiff.

HMA seems to suggest that it acted justifiably in refusing to allocate hospital funds for payment of plaintiff because its decision was made pursuant to its obligation, as manager of the hospital, to further the hospital's best interests. Putting aside again the question of whether this justification might be sufficient as a matter of law, we note simply that nothing in that portion of the management contract which is set forth in the complaint purports to give HMA the discretion to refuse to pay for any legitimate expenses of the hospital once all bond-related obligations have been satisfied. Indeed, the complaint indicates that under HMA's contract, its payment for such expenses was mandatory. We therefore fail to see any justification on the face of the complaint for HMA's actions, and plaintiff has, as we have indicated, expressly alleged that HMA acted without such justification. Under these circumstances, count IV should not have been dismissed.

See *Scholwin v. Johnson* (1986), 147 Ill. App. 3d 598, 609, 498 N.E.2d 249, 256.

We likewise find improper the dismissal of count VI, which alleged intentional interference with contract by defendant National Medical. As with HMA in the case of count IV, defendant National Medical argues that dismissal of count VI should be sustained on the grounds of the complaint that showed that its actions were justified. The allegations in count VI against National Medical are, however, essentially the same as those in count IV against defendant HMA which we have just held to be sufficient.

Defendant National Medical makes the additional claim that count VI fails to allege a cause of action because a corporation cannot be liable for intentional interference with its own contracts. In support of this claim, it cites *Worrick v. Flora* (1971), 133 Ill. App. 2d 755, 272 N.E.2d 708. That case, however, involved a situation where an individual who was terminated from his employment as treasurer of a corporation attempted to bring an action for tortious interference with his employment contract against his corporate employer and the president and principal shareholder of the corporation. In count VI of this case, plaintiff does not seek recovery against the corporation with which it contracted, Mt. Vernon Hospital, or any officer or shareholder of that corporation, but rather against a third party. While the evidence may ultimately show that defendant National Medical's agreement with the hospital resulted in its being placed in a position such that its actions were legally equivalent to those of the hospital itself, such a relationship is not apparent from the face of the complaint.

■ Plaintiff next argues that the circuit court should not have dismissed count VII of its second amended complaint. In that count, plaintiff sought recovery against Centerre under the theory of unjust enrichment. To state a cause of action for unjust enrichment, a complaint need only allege that there was an unjust retention of a benefit, including money, by one party to the detriment of another party, against the fundamental principles of justice, equity, and good conscience. (*Kenneke v. First National Bank* (1978), 65 Ill. App. 3d 10, 12, 382 N.E.2d 309, 311.) Such allegations have been made in this case.

■ Count VII avers that plaintiff provided essential pharmaceutical goods and services for the operation of Mt. Vernon Hospital. Revenues were generated when those goods and services were resold to the hospital's patients. Yet, plaintiff never received payment. Instead, Centerre, which controlled "directly and indirectly all payments made

to creditors by and on behalf of Mt. Vernon Hospital," prevented the making of payments to plaintiff "in preference to the receipt of payments to itself." According to the complaint Centerre knew or should have known when it accepted payment from revenues generated by the hospital's resale of goods and services provided by plaintiff that the hospital would be unable to pay plaintiff for those goods and services if Centerre were paid. Indeed, plaintiff asserts that Centerre caused the hospital to remain open "in order, in part, to convert the labor, goods and services of the plaintiff into revenues needed by Mt. Vernon Hospital to make payments to Centerre." Measured against the requirements for pleading a cause of action for unjust enrichment and the liberal standards applicable to the sufficiency of causes of action in general, we believe that these allegations are adequate.

Centerre protests that count VII is fatally defective because while "all the actions attributed to Centerre leading up to Centerre's alleged unjust enrichment were undertaken by [Michael A. Alexander]," the complaint does not adequately allege that Alexander was Centerre's agent. This argument is wholly without merit. Agency is a consensual, fiduciary relationship whereby the principal has the right to control the conduct of the agent and the agent has the power to effect the legal relations of the principal. (*Stefani v. Baird & Warner, Inc.* (1987), 157 Ill. App. 3d 167, 171, 510 N.E.2d 65, 68.) In this case, plaintiff's complaint suggests that Centerre selected Alexander to be chairman of the board and a trustee on the board of trustees of Mt. Vernon Hospital. While this alone may be insufficient to establish Alexander's status as Centerre's agent, it is well established that the existence and extent of an agency relationship may be established by circumstantial evidence based upon an examination of the situation of the parties, their acts, and other relevant circumstances. (157 Ill. App. 3d at 171, 510 N.E.2d at 68.) Here, the complaint further alleges that Centerre "controlled directly and indirectly all payments made to creditors by and on behalf of Mt. Vernon Hospital"; that, through Alexander, Centerre caused Mt. Vernon Hospital to remain open "in order, in part, to convert the labor, goods and services of plaintiff into revenues needed by Mt. Vernon Hospital to make payments to Centerre"; and that Centerre directed Mt. Vernon Hospital "to make payments to it, while not permitting any payments to be made to plaintiff."

A *prima facie* case of agency can be created by inference or presumption (157 Ill. App. 3d at 171, 510 N.E.2d at 68), and when all of the foregoing allegations are considered together, the reasonable inference is that the relationship between Centerre and Alexander was

indeed that of principal and agent. At the very least, the nature of the relationship between Centerre and Alexander remains subject to debate. The rule in Illinois is that unless the parties' relationship is so clear as to be undisputed, the existence and scope of an agency relationship are questions of fact to be determined by the trier of fact. (157 Ill. App. 3d at 171, 510 N.E.2d at 68.) Accordingly, count VII of plaintiff's second amended complaint should not have been dismissed on the grounds that plaintiff's allegations of agency were insufficient.

Even if we were to agree with Centerre that plaintiff's allegations of agency were insufficient, our conclusion that count VII was improperly dismissed would remain unchanged. As we have noted, Centerre argues that plaintiff's claim for unjust enrichment is completely dependent upon Alexander's alleged agency relationship with Centerre "because all the actions attributed to Centerre leading up to Centerre's alleged unjust enrichment" were undertaken by Alexander. This, however, is simply not the case. In fact, count VII makes only one express reference to Centerre's having acted through Alexander as its agent. Throughout the remainder of the count, plaintiff refers to the conduct of Centerre itself.

Centerre next argues that the claim for unjust enrichment cannot stand because it held the status of a secured creditor of the hospital and, as such, its right to payment from the hospital was superior to that of plaintiff. Whether this is so cannot be determined conclusively from the face of plaintiff's complaint. In any case, Centerre has cited no authority which suggests that a secured creditor is insulated from liability for unjust enrichment where, as in this case, the secured creditor is alleged to have caused its debtor (the hospital) to remain open in order, in part, to convert the labor, goods, and services of an unsecured creditor into revenues which the debtor needed in order to make payments to the secured creditor. Resolution of these issues will ultimately turn on the facts which are developed in this case. They cannot be properly considered on a motion to dismiss.

Centerre similarly asserts that it cannot be held liable for unjust enrichment because it was merely acting in the capacity of a trustee and retained none of the benefits of the payments from the hospital for itself. Again, however, this is a question which can only be resolved after the facts of this care are more fully developed. While the complaint alleges that Centerre was a trustee of certain bonds used in the financing of Mt. Vernon Hospital under the terms of the 1981 indenture and that under the terms of the indenture and the hospital's lease agreement all rental payments made by the hospital pursuant to the lease were to be paid to Centerre for use in paying the bond hold-

ers, there is no indication from the complaint that Centerre did, in fact, ever pay any of the monies it received over to those bond holders. The complaint alleges that monies from the hospital were paid to Centerre, and if Centerre retained those monies or derived benefit from the payments, we fail to see how its status as trustee can insulate it from liability. See *Kenneke v. First National Bank* (1978), 65 Ill. App. 3d 10, 12, 382 N.E.2d 309, 311.

Finally, Centerre argues that count VII was properly dismissed because plaintiff has a full and adequate remedy at law. Plaintiff asserts that this position is untenable, because the adequate remedy at law which is alleged to exist consists of the action for breach of contract which plaintiff asserted in count I of its complaint against Mt. Vernon Hospital, a different defendant. According to plaintiff, it has no other adequate legal remedy against Centerre itself and Centerre cannot avoid liability under a claim of unjust enrichment simply because a cause of action for breach of contract may be available to it against some other party. We need not address the merits of plaintiff's analysis, however, for there is a more fundamental flaw in Centerre's position. The existence of an adequate remedy at law is an equitable defense. Although there has been considerable confusion on the matter, unjust enrichment is not an equitable action. Rather, unjust enrichment, sometimes referred to as restitution, contract implied in law, quasi-contract, or an action in *assumpsit*, is an action at law. Accordingly, because it is an action at law, it is not subject to Centerre's equitable defense that an adequate remedy at law exists. *Partipilo v. Hallman* (1987), 156 Ill. App. 3d 806, 810, 510 N.E.2d 8, 11.

We turn then to the propriety of the dismissal of count VIII of plaintiff's second amended complaint. That count asserted a cause of action against defendants Mt. Vernon Hospital, HMA, National Medical, and Centerre based on the tort of fraudulent misrepresentation. Our supreme court has recently held that in order to allege a cause of action for fraudulent misrepresentation, the following elements must be pleaded: (1) false statement of material fact; (2) known or believed to be false by the party making it; (3) made to induce the other party to act; (4) action by the other party in reliance on the truth of the statement; and (5) damage to the other party resulting from such a reliance. In addition, the reliance upon the misrepresentation must have been justified, *i.e.*, the other party must have had a right to rely upon the statement. *Charles Hester Enterprises, Inc. v. Illinois Founders Insurance Co.* (1986), 114 Ill. 2d 278, 288, 499 N.E.2d 1319, 1323.

In this case, plaintiff alleged that the various defendants,

through their agents and employees, made repeated and numerous knowingly false promises and representations to plaintiff with the "intent to induce plaintiff to continue providing pharmaceutical goods and services without compensation." Among the particular "false promises and representations" specified in the complaint were the following:

(1) that the representation was made to plaintiff by the hospital, through its agents, on or about July 28, 1981, that loans secured by the hospital's receivables were being obtained in order to pay contractors and creditors, including plaintiff;

(2) that on or about October 20, 1981, the hospital and Centerre caused a press release to be sent to plaintiff acknowledging the debts to suppliers which had accumulated and representing that "[w]ith Medicare reimbursement we will be able to pay all suppliers for current services, and will soon begin to pay all outstanding balances as soon as practicable";

(3) that on or about November 10, 1981, the hospital and Centerre caused a letter to be sent to plaintiff promising "to pay all new invoices on a current basis" and asking plaintiff "to work with us and give the hospital management sufficient time to *** solve our cash problem";

(4) that on or about November 10, 1981, the president of the hospital's board of directors advised plaintiff by telephone that defendants wished to discuss the past-due debt and the current outstanding amount in order to implement a payment plan;

(5) that on or about August 22, 1982, the hospital, National Medical, and Centerre caused an article to be published in the local newspaper which stated that the hospital's cash flow and finances were rebuilt and that it would be only a matter of time before leftover financial problems, including payment of the amount owed to plaintiff, would be resolved;

(6) that on or about December 10, 1982, the hospital's administrator, who was an employee of National Medical, met with plaintiff on behalf of defendants and represented that the hospital would begin making payments on the balance then due under the pharmaceutical services agreement, and discussed with plaintiff making good-faith payment on the past-due amount plus making current payments;

(7) that on or about January 17, 1983, the same hospital administrator spoke with plaintiff by telephone and represented that he would like to discuss the implementation of a payment plan to reduce the amounts due and owing to plaintiff by the

hospital under the pharmaceutical services agreement;

(8) that on or about January 28, 1983, at a meeting of the hospital's board of trustees, the hospital, National Medical, and Centerre, through their agents, secretly decided to terminate the pharmaceutical services agreement with plaintiff while, at the same time, representing to plaintiff that they wished to negotiate a settlement of the monies owed to plaintiff by the hospital and to discuss a "solution" to the current contract;

(9) that on or about February 3, 1983, the hospital's administrator met with plaintiff, concealed the fact that the hospital intended to terminate the contract, and offered to pay a portion of the amount due and owing and to make monthly payments of the past-due amounts at such time as the hospital's financial situation was stabilized;

(10) that on or about February 18, 1983, Michael Alexander, chairman of the hospital's board, telephoned plaintiff on behalf of the hospital and Centerre and advised plaintiff about being paid the amounts which were due and owing under the terms of the pharmaceutical services agreement; and

(11) that on or about April 5, 1983, Alexander again telephoned plaintiff on behalf of the hospital and Centerre, advised plaintiff that the hospital's board of trustees was going to meet and vote on a plan for payment of the amounts due and owing to plaintiff by the hospital under the terms of the pharmaceutical services agreement, requested that plaintiff continue to provide essential pharmaceutical goods and services, and promised that the hospital would begin to make current payments to the plaintiff when due.

According to the complaint, each of the foregoing promises and misrepresentations was untrue and was known or believed by defendants to be false and fraudulent when made. The purpose of these false promises and representations was to induce plaintiff to continue providing essential pharmaceutical goods and services under its pharmaceutical services agreement and to do so without compensation, when defendants had "no intention whatsoever of ever paying plaintiff for those services." Plaintiff further alleged that it had a right to rely upon defendants' promises and representations, that those promises and representations did induce it to continue to provide essential pharmaceutical goods and services to the hospital pursuant to the terms of the pharmaceutical services agreement, and that, as a result, it sustained damages amounting to nearly $1 million.

In this case, defendants HMA and National Medical (but not Cen-

terre) argue that the foregoing allegations are insufficient to state a cause of action for fraudulent misrepresentation because the particular misrepresentations cited by plaintiff related solely to events which were to occur in the future. We acknowledge that, as a general rule, a promise to perform an act, even though made without a present intention to perform, is insufficient to constitute fraud. (*International Meat Co. v. Bockos* (1987), 157 Ill. App. 3d 810, 815, 510 N.E.2d 1013, 1016.) Nevertheless, an exception to this rule occurs where the false promise or representation of intentions or future conduct is alleged to be the scheme or device employed to accomplish the fraud. 157 Ill. App. 3d at 815, 510 N.E.2d at 1016.

Considering the totality of the circumstances as set forth in the complaint (see 157 Ill. App. 3d at 815, 510 N.E.2d at 1016), we believe this to be such a case. In count VIII, plaintiff has specifically alleged that the repeated and numerous false promises and representations made by defendants, the particulars of which we have detailed above, did constitute a scheme which was designed to cause plaintiff to continue to provide essential pharmaceutical goods and services without compensation. As we have noted, the complaint further alleges that while defendants had no intention of ever paying plaintiff, they made a long series of promises and representations to plaintiff over a period spanning nearly two years so that they could continue to receive pharmaceutical goods and services from it. Moreover, a fair reading of the complaint indicates that defendants acted not only individually, but also in concert, in attempting to accomplish this end. Absent some express admission, of which plaintiffs are not likely to be aware at the pleading stage, we do not see how the existence of a scheme could be pleaded with any greater specificity.

Defendant National Medical asserts, in the alternative, that even if the complaint adequately alleged the existence of a scheme to defraud, count VIII was nevertheless properly dismissed because none of the allegedly fraudulent representations involved conduct controllable by the defendants. (See *Kusiciel v. La Salle National Bank* (1982), 106 Ill. App. 3d 333, 435 N.E.2d 1217; *Younger v. Revelle* (1979), 78 Ill. App. 3d 1, 397 N.E.2d 221.) This argument is untenable. While certain of the challenged misrepresentations did refer to loan proceeds and medicare reimbursement, receipt of which turned, in part, on actions by third parties, the alleged misrepresentations did not, as a whole, purport to make repayment to plaintiff contingent upon the receipt of these funds from outside sources. Rather, the gist of the representations was that plaintiff would be paid, period. According to the complaint, the plaintiff provided pharmaceutical goods and ser-

vices for the operation of the hospital and thereupon became entitled to payment pursuant to the terms of the pharmaceutical services agreement. No one, other than defendants, had the right to limit those payments.

Defendant HMA, for its part, also argues that count VIII of the complaint was properly dismissed against it because the allegedly fraudulent misrepresentations were all made after its managerial services contract with the hospital had been terminated, with the possible exception of the misrepresentation made on or about July 28, 1981. With respect to that misrepresentation, defendant HMA argues that it is deficient because HMA is not specifically mentioned. Instead, the complaint refers generally to Mt. Vernon Hospital, acting through its agents and employees.

We find these arguments unpersuasive. Based upon the allegations of plaintiff's complaint alone, we cannot ascertain when HMA's management services agreement with the hospital terminated, nor do we know what exactly the relationship was between HMA and the hospital while the management services agreement remained in effect. If the contract between HMA and the hospital extended past July 28, 1981, then it is possible that the responsibility for the challenged misrepresentations by the hospital, its agents and employees could be imputed to HMA. Resolution of these issues must await further development of the facts. They are not a proper basis for dismissing plaintiff's cause of action on the pleadings.

Defendant Centerre argues that count VIII was properly dismissed because that count does not adequately allege the elements necessary to establish that Michael A. Alexander was its agent. We note, however, that where Alexander is mentioned, plaintiff has specifically alleged that Alexander acted on behalf of Centerre. Moreover, count VIII refers to misrepresentations made by and on behalf of Centerre by individuals other than Alexander. This argument is therefore wholly without merit.

Finally, each of the defendants argues that count VIII was properly dismissed because plaintiff was not justified in relying on any misrepresentations which may have been made. Under Illinois law, a person may justifiably rely on representations where the parties did not have equal knowledge or means of knowledge of the facts. (*Glazewski v. Allstate Insurance Co.* (1984), 126 Ill. App. 3d 401, 408, 466 N.E.2d 1151, 1156, *rev'd in part on other grounds* (1985), 108 Ill. 2d 243, 483 N.E.2d 1263.) Defendants argue that such equal knowledge was present here, but in so doing they rely on facts and inferences from facts which are not evident from the face of plaintiff's com-

plaint. As we pointed out earlier in this opinion, a party may not prevail on a motion to dismiss by adducing facts which would tend to negate the allegations contained in the complaint itself. *Longust v. Peabody Coal Co.* (1986), 151 Ill. App. 3d 754, 757, 502 N.E.2d 1096, 1098.

The right to rely is a question of fact which cannot be decided on a motion to dismiss. (*Glazewski v. Allstate Insurance Co.* (1984), 126 Ill. App. 3d 401, 408, 466 N.E.2d 1151, 1156, *rev'd in part on other grounds* (1985), 108 Ill. 2d 243, 483 N.E.2d 1263.) Defendants argue that an exception to this rule exists where the plaintiff has pleaded facts which preclude a finding of reasonable reliance, but this is hardly such a case. Here, the most one could infer from the complaint itself is that the hospital was in serious financial condition and that plaintiff went more than two years without being paid. We are unwilling to hold based on these allegations alone that plaintiff was not justified in relying upon defendants' representations that such payments would be forthcoming.

For the foregoing reasons, the judgment of the circuit court of Jefferson County is reversed, and this cause is remanded for further proceedings not inconsistent with this opinion.

Reversed and remanded.

CALVO, J., concurs.

JUSTICE KARNS, dissenting:

We have repeatedly stated that a motion to dismiss under section 2—615 of the Code of Civil Procedure (Ill. Rev. Stat. 1985, ch. 110, par. 2—615) may not be employed as an alternative to the summary judgment procedure provided in the Code of Civil Procedure (see, *e.g.*, *Longust v. Peabody Coal Co.* (1986), 151 Ill. App. 3d 754, 502 N.E.2d 1096), and I am tempted to concur in the majority opinion solely on this basis. Yet, a defendant ought not be put to the expense and inconvenience of defending a groundless lawsuit, and I must conclude that this is such an action. See, *e.g.*, *Bergfeld v. Stork* (1972), 7 Ill. App. 3d 486, 288 N.E.2d 15.

As the majority analysis of the relevant counts of the complaint demonstrates, it requires considerable extrapolation from the pleaded facts to postulate what proof plaintiff might adduce that could sustain recovery for plaintiff under these counts.

It seems to me apparent from the pleaded facts we are simply dealing with the unfortunate, but not unusual, circumstance of a

failed business where creditors, or some creditors, do not get paid because there are no funds with which to pay. Why plaintiff would continue to provide goods and services for three years without any payment under repeated promises to pay one can only speculate. Other suppliers and creditors were paid, according to the complaint, and I see no allegations in the complaint that any defendant misappropriated any funds for its own use. Negligence or poor business judgment in the operation of the hospital could not support recovery for purely economic loss under the theories of recovery pleaded in the counts before us on appeal.

Focusing on some aspects of the complaint, first it seems to me no cause of action is stated against Centerre. Notwithstanding the innuendo in the complaint, suggested by reference to Centerre's control over Alexander, all that is alleged is that Centerre received rental payments as trustee for the bond holders, which it was entitled to receive from the two managers, HMA and National Medical, which they were required to pay before any creditor was paid under the contractual documents pleaded in the complaint. These facts are clear from the written agreements set out in the complaint. There is no allegation that Centerre did not pay over these monies to the bondholders as it was obligated to do under the terms of the indenture. I do not believe that unjust enrichment was properly pleaded as Centerre received what it was entitled to receive as trustee for the bondholders, which is unrelated to the nonpayment of the sums due plaintiff.

As regards the allegations of fraud, the well-pleaded facts simply allege promises to pay in the future. Such promises, even assuming plaintiff was justified in relying on them, considering it was never paid, are not misrepresentations of existing facts and cannot be the basis for an action for fraud unless a *scheme* to defraud is alleged. (*Kusiciel v. La Salle National Bank* (1982), 106 Ill. App. 3d 333, 435 N.E.2d 1217; *Younger v. Revelle* (1979), 78 Ill. App. 3d 1, 397 N.E.2d 221.) I do not consider the allegations of fact sufficient to allege a scheme under this narrow exception to the rule as the well-pleaded facts simply allege that certain creditors were paid and plaintiff was not paid notwithstanding repeated promises by the defendants that plaintiff would be paid. While the word "scheme" appears in count VIII, the well-pleaded facts simply allege promises by the individual defendants that plaintiff would be paid. No specific scheme to defraud is pleaded. *International Meat Co. v. Bockos* (1987), 157 Ill. App. 3d 810, 510 N.E.2d 1013.

As to counts IV and VI alleging tortious interference with contract by HMA and National Medical, it is apparent from the allega-

tions in the complaint that these defendants provided all management services for the hospital, including the furnishing of a controller, and they collected accounts and paid all bills. Plaintiff's contract was signed by Holley, the hospital administrator employed by HMA, and count II of the complaint alleges that HMA, acting pursuant to the management agreement, "caused" the hospital to enter into the pharmaceutical contract with plaintiff.

Nowhere in counts IV and VI does plaintiff plead facts alleging that HMA's and National Medical's refusal to pay plaintiff was unjustified. Plaintiff's allegation that the decision not to pay plaintiff was "without legal justification" is simply a legal conclusion. Under *Swager v. Couri* (1979), 77 Ill. 2d 173, 395 N.E.2d 921, lack of legal justification is an element of plaintiff's case. Where the gravamen of the complaint is that a third party caused a contracting party not to pay money due under a contract, I believe it is required that plaintiff plead facts stating that the funds were available for payment but were not paid because of defendant's unjustified conduct in causing nonpayment. All that is alleged here is that defendants caused some providers and creditors to be paid, but not plaintiff. I do not believe this is sufficient.

I believe counts IV and VI are defective for an additional reason. The tort of interference with contractual relations simply does not apply to these facts as pleaded. It is apparent from the complaint that Mt. Vernon Hospital, Inc., was only a contracting entity. It took no part in the operation of the hospital. The hospital administrators were HMA and National Medical, who were charged with the duties of performing all contractual duties entered into by Mt. Vernon Hospital. In fact, HMA negotiated and signed plaintiff's contract. HMA and National Medical were responsible for performing the obligations of this contract. I do not believe these defendants can be charged with tortiously interfering with a contract by inducing the breach of a contract they were responsible to perform. As in *Loewenthal Securities Co. v. White Paving Co.* (1932), 351 Ill. 285, 299, 184 N.E. 310, 315, HMA and National Medical were not intermeddling outsiders. They were the entities responsible for the complete operation of the hospital, including performance of all contracts. They were privileged to exercise their business judgment in paying suppliers and creditors. Their conduct cannot be charged with the malice required to sustain an action for tortious interference with contract. As I read the court's decision in *Swager v. Couri* (1979), 77 Ill. 2d 173, 190, 395 N.E.2d 921, 928, our supreme court would not impose liability for tortious interference with contract under these circumstances.