WILLIAM A. SCHOLWIN, JR., *et al.*, Plaintiffs-Appellants, v. KARIN JOHNSON *et al.*, Defendants-Appellees.

Second District   No. 85—0425

Opinion filed August 4, 1986.—Rehearing denied October 27, 1986.

Raymond A. Boldt, of Mundelein, for appellants.

Kenneth J. Glick and C. Jeffrey Thut, both of Ray & Glick, Ltd., of Libertyville, for appellees.

JUSTICE SCHNAKE delivered the opinion of the court:

On August 1, 1977, plaintiffs, William and Betty Scholwin, along with defendants, Donald and Carolyn Baranowski, entered into an installment contract to purchase certain real estate from the McHenry State Bank, as trustee under trust No. 716. Defendants Karin and Kenneth Johnson are beneficiaries of that trust. The contract included a forfeiture clause which gave the seller the right to declare a forfeiture if the purchasers failed to make two consecutive payments.

The Scholwins and the Baranowskis entered into a separate agreement which defined their rights and obligations *inter se* with respect to the installment contract. This separate agreement apportioned the payments between the purchasers and provided that the Scholwins would own and occupy the southeast lot, and the Baranowskis would own and occupy the northwest lot. Because there was only one well on the property, located on the northwest lot, the agreement also provided that the parties would contribute equally to the cost of constructing a new well on the southeast lot.

The Scholwins and the Baranowskis moved onto their respective lots, but the new well was never built. The Baranowskis allowed the Scholwins to use water from the well on the northwest lot.

Eventually, the Scholwins fell behind in their payments on the installment contract, and in October of 1981 they listed their portion of the property with Welcome Mat Realty. Defendant Carolyn

Baranowski was a realtor with that company. During 1982 the Scholwins became dissatisfied with the efforts of Welcome Mat, and they then listed their property with Coldwell Banker Real Estate.

On April 25, 1983, the Scholwins, along with defendant Kenneth Johnson, entered into a contract to sell the southeast lot to Richard Sochor, who apparently had been located by Coldwell Banker. The contract required the Scholwins, five days before the closing, to furnish Sochor with a commitment for title insurance. The contract also provided that at the closing Johnson would furnish an agreement, signed by himself and the Baranowskis, whereby Sochor would be entitled to receive water from the well on the northwest lot for $10 per month "for a period of 10 years or until a well is installed" on the southeast lot. The title insurance company subsequently informed the Scholwins that it would not provide the commitment unless the Baranowskis quitclaimed any interest they might have in the southeast lot. According to the Scholwins, the Baranowskis refused to execute a quitclaim deed, and refused to discuss "the shared well or the sharing of expenses for the installation of a new well" on the southeast lot. According to the Scholwins, this conduct on the part of the Baranowskis prevented the sale of the southeast lot to Sochor. The Scholwins did, however, vacate the premises on the southeast lot in anticipation of closing the sale.

Subsequently, on July 28, 1983, the Scholwins and the Baranowskis were sent a "Notice of Intention to Declare Forfeiture." It stated that payments on the installment contract were in arrears in the amount of $3,381, and that unless the default was cured by September 5, 1983, the purchasers' rights under the contract would be forfeited. The default was not cured by the date specified, and on September 10, 1983, the McHenry State Bank, as trustee under trust No. 716, sent the Scholwins and the Baranowskis a declaration of forfeiture. The Johnsons subsequently took possession of the property and sold it to defendant McHenry State Bank, as trustee under Trust No. 2852.

The Scholwins brought this action in January 1984. As against the Johnsons and the McHenry State Bank, as trustee under trust No. 2852, the Scholwins' complaint, as amended, sought reinstatement of the installment contract and an opportunity to cure the default. As against the Baranowskis, it sought damages for intentional interference with contractual relations.

After the parties had conducted discovery, both the Scholwins and the Johnsons filed motions for summary judgment in regard to the portion of the complaint which sought reinstatement of the install-

ment contract and an opportunity to cure the default. The trial court denied the Scholwins' motion and granted that of the Johnsons'. The Baranowskis filed a motion to dismiss the complaint against them for failure to state a cause of action. The trial court granted that motion. Both orders entered by the trial court included the language from Supreme Court Rule 304(a) (87 Ill. 2d R. 304(a)) that there was no just reason for delaying enforcement or appeal, and the Scholwins have appealed them both.

We first consider the summary judgment entered in favor of the Johnsons on that portion of the Scholwins' complaint which sought reinstatement of the installment contract and an opportunity to cure the default. The Scholwins' challenge to that summary judgment has several parts. First, they contend that the "Notice of Intention to Declare Forfeiture" was legally insufficient because it was signed by the attorney for the beneficiaries rather than by the trustee of trust No. 716, or its agent, and because it did not accurately state the amount past due. Second, they maintain that there is a genuine issue of material fact regarding whether they tendered performance prior to the forfeiture. Finally, they maintain that there are genuine issues of material fact regarding whether they should receive equitable relief from the forfeiture under the guidelines set forth in *Aden v. Alwardt* (1979), 76 Ill. App. 3d 54, 394 N.E.2d 716.

In the instant case the parties agree that the "Notice of Intention to Declare Forfeiture" was a necessary step in the forfeiture procedure. The vendor had previously accepted late payments. As our supreme court has stated:

"The rule is that a vendor may, by his conduct, waive his right to declare forfeiture of a contract of which time is the essence. [Citations.] Though the conduct of the vendor may not necessarily be an absolute waiver of the right, yet in a court of equity it amounts to a suspension of the right of forfeiture which can be resumed only by giving definite and specific notice of an intention to require performance of that feature of the contract. [Citations.]" *Forest Preserve Real Estate Improvement Corp. v. Miller* (1942), 379 Ill. 375, 382, 41 N.E.2d 526.

■ The notice in the instant case was signed by Russell Ray, as "Attorney for Beneficiary" of trust No. 716, and it stated, among other things, that "It is the intention of Seller [the trust] to declare all your rights under the Contract to be forfeited" unless the default was cured in 39 days. The Scholwins note that under the installment contract, the only party that could declare a forfeiture was the trust. They argue that the notice of intent to declare forfeiture was legally

insufficient because it was not signed by the trustee or its agent. They note in this regard that the trust agreement for trust No. 716 provided that "[n]o beneficiary hereunder shall have any authority to contract for or in the name of the trustee."

We cannot agree with the Scholwins' argument. In addition to the provision quoted above, the trust agreement stated that "the interest of any beneficiary hereunder shall consist *** of a power of direction to deal with the title to said property." Thus, although the beneficiaries were not authorized to contract for or in the name of the trustee, they had the power to direct him to contract or otherwise deal with the title to the property. It has been held that if a beneficiary of such a land trust deals with the property as if no trust existed and contracts as owner to sell the land, the contract is void as being beyond the beneficiary's power to act. (*Madigan v. Buehr* (1970), 125 Ill. App. 2d 8, 260 N.E.2d 431.) If, however, the land-sale contract explicitly provides for the beneficiary's power to direct the trustee to convey title, or if, because of disclosure of the trust and the beneficiary's status, the contract can be construed as exercising that power, the contract is valid. (*First National Bank v. Oldenburg* (1981), 101 Ill. App. 3d 283, 427 N.E.2d 1312; *Jacobs v. Carroll* (1977), 46 Ill. App. 3d 74, 360 N.E.2d 136.) Here, of course, we are called upon to determine the validity, not of the contract to sell the land, but of a notice of intention to exercise certain rights under that contract. We believe the validity of such a notice, however, should be governed by the same principles because if a beneficiary may, by maintaining the distinction between his powers and those of the trustee, validly contract to sell land held in trust, surely he may in the same manner validly give notice of an intention to exercise rights under a land-sale contract. Here the notice of intention to declare a forfeiture explicitly referred to trust No. 716 as the vendor under the installment contract, and it disclosed the beneficiary status of the parties who caused the notice to be sent. The notice stated that it was the intent of the vendor to declare a forfeiture if the default was not cured within the time stated, and under the trust agreement it was the beneficiaries' prerogative to determine that intent by virtue of their power to direct the trustee to deal with the title to the land. We consider that the beneficiaries properly maintained the distinction between their powers and those of the trustee, and that the notice of intention to declare forfeiture was, therefore, legally valid. The actual declaration of forfeiture, which sought to terminate the purchasers' rights under the contract and was served on them after the expiration of the grace period, was signed by an agent of the trustee bank,

and no question has been raised as to its validity.

■ The Scholwins also maintain that under the Forcible Entry and Detainer Act (Ill. Rev. Stat. 1985, ch. 110, par. 9—101 *et seq.*) the notice of intent to declare forfeiture was required to be signed by the trustee, rather than the beneficiary. We cannot agree. The vendor here did not file an action under that act. There was no need to do so. The purpose of an action under the Forcible Entry and Detainer Act is to adjudicate rights of possession (*Clore v. Fredman* (1974), 59 Ill. 2d 20, 319 N.E.2d 18), and the Scholwins had vacated the premises before the notice of intent to declare forfeiture was sent. It has been held that a notice of intent to declare forfeiture need not satisfy the provisions of the Forcible Entry and Detainer Act where the purchasers are not in possession at the conclusion of the grace period, and the vendor has no occasion to sue under the act. *Hadie v. Erlandson* (1963), 41 Ill. App. 2d 328, 190 N.E.2d 848 (abstract of opinion).

■ As noted above, the Scholwins also maintain that the notice was legally insufficient because it did not accurately state the amount past due. The notice stated that the arrearage was $3,381, and the Scholwins, although acknowledging that they were in default, claim that it was a lesser amount. They cite *Forest Preserve Real Estate Improvement Corp. v. Miller* (1942), 379 Ill. 375, 41 N.E.2d 526, for the proposition that an inaccurate statement of the amount due renders a notice of intent to declare forfeiture invalid and ineffective if the purchaser's only default is delinquency in payments. The Scholwins, however, have misread the opinion in that case because the rule there stated is to the contrary. In the *Forest Preserve* case, the notice of intent to declare forfeiture claimed that the arrearage included $4,440.69 in principal, $1,394.16 in interest, plus the real estate taxes for the years 1931 to 1935 inclusive. Our supreme court concluded that under the installment contract the purchaser was not obligated to pay the taxes. The court stated, however, that "[t]he fact that appellee [the vendor] demanded more than it was entitled to receive, did not of itself render the forfeiture void." (379 Ill. 375, 385, 41 N.E.2d 526.) The explanation for that rule was that the contract itself provided the measure of payment necessary for reinstatement, and the purchaser, by tendering that amount within the time prescribed by the notice, would have been able to avoid forfeiture. The court stated, "[I]f the forfeiture notice contains one matter on which he is entitled to give notice of forfeiture, such notice is good." (379 Ill. 375, 385, 41 N.E.2d 526.) Here the Scholwins do not dispute that they were in default, and that under the strict terms of the install-

ment contract, the vendor was entitled to declare a forfeiture. Accordingly, any inaccuracy in the stated amount past due would not have rendered the notice legally ineffective.

We next consider the Scholwins' argument that there is a genuine issue of fact on the question of whether they tendered performance prior to the forfeiture. We find this contention to be utterly without support in the record. It is, of course, true that summary judgment should not be entered where there are genuine issues of material fact to be tried. (Ill. Rev. Stat. 1985, ch. 110, par. 2—1005.) There is, however, no question of fact on this issue. In support of their argument, the Scholwins have cited the affidavit of William Scholwin in which he averred that, after receiving the notice of intent to declare forfeiture, he made an appointment with defendant Kenneth Johnson "to settle the amount past due and finalize the details of the sale" to Sochor. Scholwin averred that the purpose of the meeting was "to resolve the past due amounts." He further alleged that Johnson did not keep the appointment. Finally, Scholwin alleged that prior to the forfeiture he made several attempts to telephone Johnson "to discuss the missed meeting and his concerns," but that Johnson was never in and failed to return the calls. These averments indicate that Scholwin unsuccessfully attempted to meet with Johnson to resolve the dispute over the amount due. They do not indicate that Scholwin ever tendered any money to Johnson. In the *Forest Preserve* case discussed above, our supreme court held that when the notice of forfeiture claims is more than past due under the contract, it is not invalid, and that the purchaser may protect his interests by tendering the amount actually due. This the Scholwins did not do. There is no genuine question of fact on this issue.

We next consider the Scholwins' contention that the summary judgment in favor of the Johnsons was improper because there are genuine issues of material fact regarding whether they should receive equitable relief from the forfeiture under the guidelines set forth in *Aden v. Alwardt* (1979), 76 Ill. App. 3d 54, 394 N.E.2d 716. In *Aden* this court noted that courts of equity abhor forfeitures and will enforce them only where the right to forfeiture is clearly and unequivocally shown and injustice will not result. We stated that the decision on whether to grant relief requires a balancing of the equities in the case. We then quoted the following passage from *Krentz v. Johnson* (1976), 36 Ill. App. 3d 142, 145, 343 N.E.2d 165:

> "The principal factors considered significant in granting relief from forfeitures appear to be: The prior acceptance of late payments and whether the buyer has been given a reasonable

warning that the seller will insist on prompt payment in the future [citations]; the length of time involved in the delay and whether the default has been repeated [citation]; whether substantial payment has been made on the whole contract [citation]; whether the purchaser has substantially improved the property [citation]; and whether there has been a mere delay rather than a suspension of the payments [citations]." *Aden v. Alwardt* (1979), 76 Ill. App. 3d 54, 59, 394 N.E.2d 716.

The Scholwins maintain that there are genuine issues of fact regarding whether substantial payment has been made on the contract, and regarding the amount past due. In response to interrogatories propounded by the Johnsons, the Scholwins submitted a list of the payments made under the contract. In connection with their motion for summary judgment, the Johnsons submitted a statement of a certified public accountant they had retained who calculated, based on the list provided by the Scholwins, the amount of the purchase price allocable to the Scholwins which had been paid as well as the amount past due as of July 1, 1983. The accountant's worksheets were also submitted. These documents indicated that of the portion of the original purchase price allocable to the Scholwins, *i.e.*, $35,000, $3,023.79 had been paid, and that the delinquency amounted to $2,356.75 in principal and $3,224.40 in interest. The Scholwins do not dispute that the list of payments they provided was accurate. They cited to the trial court William Scholwin's deposition in which he stated that he "believed" the delinquency was between $500 and $800. They also submitted a handwritten "amortization," presumably prepared by William Scholwin, which reflected amounts different from those calculated by the accountant. No evidence was presented that William Scholwin had any expert training in accounting.

The materials submitted by the Scholwins amounted to nothing more than a denial by a lay witness of the correctness of calculations performed by an expert based on undisputed facts. In our judgment, these submissions do not create a "genuine" issue of fact regarding the portion of the purchase price which had been paid off, or the amount past due under the installment contract.

■ The Scholwins also maintain that there is a genuine issue of material fact as to whether they have substantially improved the property. With this contention we agree. In his affidavit William Scholwin stated that he had spent a total of $21,165 repairing and improving the house located on the southeast lot. The affidavit detailed the work performed which included substantial remodeling. In response to interrogatories propounded by the Scholwins, the John-

sons stated that they observed no improvements on the property after the Scholwins moved out. These submissions obviously do create a genuine issue of fact. Moreover, in our judgment, that issue of fact is material because if the Scholwins did improve the property to the extent that they claim, approximately two-thirds of the purchase price, enforcement of the forfeiture would be inequitable. (See *Aden v. Alwardt* (1979), 76 Ill. App. 3d 54, 394 N.E.2d 716.) If the Scholwins can substantiate their claims, they should be given an opportunity to cure their default. Accordingly, the summary judgment in favor of the Johnsons was improper.

■ We next consider the dismissal of the Scholwins' claim against the Baranowskis which sought damages for intentional interference with contractual relations. Our review of this dismissal has been made somewhat more difficult than it should be because the Baranowskis have not filed a brief in this court. In fact, they did not file a brief or memorandum in support of their motion to dismiss in the trial court. Nevertheless, pursuant to *First Capitol Mortgage Corp. v. Talandis Construction Corp.* (1976), 63 Ill. 2d 128, 345 N.E.2d 493, we will review the trial court's ruling. The facts pertinent to this claim alleged in the Scholwins' complaint have already been set forth. The gist of the claim is that the Baranowskis prevented the consummation of the contract to sell the Scholwins' lot to Sochor by refusing to quitclaim any interest they might have in the lot, and by refusing to discuss "the shared well or the sharing of expenses for the installation of a new well." The complaint alleges that the Baranowskis conducted themselves in this manner because they "felt" the Scholwins had "cheated" Carolyn Baranowski out of her real estate sales commission, and because they did not want Sochor to be their next-door neighbor. The trial judge dismissed the complaint because he concluded that it "fails to allege malicious and intentional inducement directed at a third party other than plaintiff [the Scholwins], and fails to allege a lack of justification for defendants [Baranowskis'] actions."

■ ■ It has been stated that the elements of a cause of action for tortious interference with contractual relations are: (1) the existence of a valid and enforceable contract between the plaintiff and a third person; (2) the defendant's knowledge of the existing contract; (3) intentional and malicious inducement of the third person to breach the contract; (4) the subsequent breach by the third person due to the defendant's wrongful conduct; and (5) resulting damages incurred by the plaintiff. (See *Pfendler v. Anshe Emet Day School* (1980), 81 Ill. App. 3d 818, 401 N.E.2d 1094.) The term "malicious" used in this

context does not connote ill will, hostility, or an intent to injure, but it means intentionally and without just cause. (*Amalgamated Financial Corp. v. Atlantis, Inc.* (1982), 105 Ill. App. 3d 379, 434 N.E.2d 417.) While this statement of the necessary elements seems to require inducement of the third party to breach the contract, we are persuaded that the scope of the cause of action is broader and encompasses the situation in which the defendant prevents the plaintiff from performing the contract and, as a result, he is unable to require the third party to perform. This form of the cause of action is set forth in the Restatement (Second) of Torts sec. 766A, at 17 (1979), as follows:

> "One who intentionally and improperly interferes with the performance of a contract (except a contract to marry) between another [the plaintiff] and a third person, by preventing the other [the plaintiff] from performing the contract or causing his performance to be more expensive or burdensome, is subject to liability to the other [the plaintiff] for the pecuniary loss resulting to him."

Although we are unaware of any opinion of a court of review in this State which explicitly adopts that section of the Restatement, we find some support for our view in *Miller v. St. Charles Condominium Association* (1986), 141 Ill. App. 3d 834, 491 N.E.2d 125. In that case the plaintiff entered into a contract to sell her condominium to a third party. The defendant, an attorney who represented the condominium association, advised his client, allegedly improperly, not to execute a statement to the effect that all of the association fees for her property had been paid, and that her unit was free from encumbrance. As a result, the plaintiff was prevented from performing her obligations under the contract of sale, and the deal failed. The plaintiff sued the attorney for intentional interference with contractual relationships. The trial court entered summary judgment in favor of the attorney. On appeal the precise issue here was not raised. This court, however, reversed the summary judgment and remanded the cause for further proceedings. *Miller* thus provides some indication that a valid cause of action for intentional interference with contractual relations may arise in that context. (See also *Vaught v. Jonathan L. Pettyjohn & Co.* (1919), 104 Kan. 174, 178 P. 623 (defendants liable for interference with contractual relations based on their improper refusal to cancel a recorded mortgage on plaintiff's land which prevented plaintiff from consummating a land sale contract).) In light of the above discussion, it is clear that the Scholwins' failure to allege "malicious and intentional inducement directed at a third party other

than plaintiff" is not fatal to the cause of action. They pleaded facts showing that the Baranowskis intentionally prevented them from performing the contract, and that was sufficient.

■■■ Finally, we are not persuaded that the complaint fails to allege a lack of justification for the Baranowskis' conduct. The complaint alleges that the Baranowskis entered into an agreement with the Sholwins whereby the Scholwins would own the southeast lot and the Baranowskis would own the northwest lot. As part of that agreement the Baranowskis agreed to contribute one-half of the cost of constructing a well on the southeast lot. In light of this agreement, the Baranowskis' refusal to quitclaim their interest in the southeast lot and to discuss the sharing of expenses for the installation of a well on that lot would not have been justified.

Nor is there any justification apparent on the face of the complaint based on the Baranowskis' "feeling" that Carolyn had been "cheated" out of her sales commission. We need not decide whether a breach by the Scholwins of their listing agreement with Welcome Mat Realty would have provided justification for the Baranowskis' conduct. The complaint does not demonstrate that such a breach occurred. It does not allege that the listing agreement was an exclusive one, and it expressly avers that the Baranowskis "acted without just cause." Under these circumstances, the complaint was improperly dismissed.

For the foregoing reasons, the orders entered by the circuit court of Lake County are reversed, and this cause is remanded for further proceedings consistent with this opinion.

Reversed and remanded.

REINHARD and UNVERZAGT, JJ., concur.