RAY E. KNICKMAN II, Plaintiff-Appellee and Counterdefendant-Appellee, v. MIDLAND RISK SERVICES-ILLINOIS, INC., *et al.*, Defendants-Appellants (Midland Risk Services-Illinois, Inc., Counterplaintiff-Appellant).

Fourth District    No. 4—98—0033

Argued July 16, 1998.—Opinion filed September 18, 1998.

William S. Hanley and David A. Rolf (argued), both of Sorling, Northrup, Hanna, Cullen & Cochran, Ltd., of Springfield, for appellants.

Donald R. Tracy (argued) and Lorilea Buerkett, both of Brown, Hay & Stephens, of Springfield, for appellee.

JUSTICE GREEN delivered the opinion of the court:

On September 18, 1996, Ray E. Knickman II filed suit in the circuit court of Sangamon County against defendants Midland Risk Services-Illinois, Inc. (Midland Illinois), and Midland Financial Group, Inc. (MFG), a holding company of which Midland Illinois was a subsidiary. Count I was against Midland Illinois and alleged it had breached its contract with plaintiff by terminating him as its president at a time and in a manner not permitted by the terms of the contract. Count II was against MFG, charging it with tortious interference with the foregoing contract of employment.

On June 5, 1996, after obtaining leave of court, plaintiff filed an amendment to the complaint adding three counts and adding as parties several other subsidiaries of MFG and Charles H. Gray III, MFG's president, as defendants. Only count VI is significant to us at this time. It contended that Midland Illinois was the alter ego of MFG and that Gray and MFG should be liable for the breach of contract by Midland Illinois. Plaintiff dismissed the charges against defendant

Gray upon Gray's death. Midland Illinois filed a counterclaim against plaintiff alleging breach of his fiduciary duty to Midland Illinois and mismanagement of it.

In regard to issues not in dispute in this appeal, the circuit court entered a summary judgment in favor of defendants on count V, which charged conspiracy, and directed verdicts in favor of all defendants as to counts III and IV, charging breach of fiduciary duty. On October 7, 1997, the circuit court entered judgment on verdicts (1) in favor of plaintiff and against Midland Illinois for compensatory damages in the sum of $227,854; (2) in favor of plaintiff and against defendant MFG (a) in the sum of $227,854, stated to be "as a proximate result of [MFG's] breach of contract," and (b) finding MFG's "conduct was willful and wanton" and awarding plaintiff punitive damages against MFG in the additional sum of $500,000; and (3) in favor of plaintiff as to the counterclaim.

Midland Illinois and MFG have appealed. They contend: (1) MFG was entitled to a judgment notwithstanding the verdict as to count II, charging interference with the contract of employment; (2) the verdict on count II was against the manifest weight of the evidence; (3) MFG is entitled to a new trial on count II because the jury was improperly instructed; (4) any award against either Midland Illinois or MFG should be reduced because the award included an improper element cf plaintiff's loss of value of stock in the sum of $100,000; (5) the circuit court erred in refusing to admit into evidence designated portions of Gray's discovery deposition; and (6) the jury's determination that Midland Illinois had breached the contract was contrary to the manifest weight of the evidence. The most difficult question in this case is whether MFG can be subject to liability for the breach of plaintiff's contract under count V and also liable under count II for interfering with that contract by encouraging its breach and thus subject to $500,000 in punitive damages. MFG contends it cannot be held guilty of interfering with that contract because plaintiff has shown MFG was constructively a party to the contract, and, in any event, it was privileged to encourage the breach of that contract.

We affirm the judgment in favor of plaintiff and against defendant Midland Illinois in the sum of $227,854. We also affirm the judgment in favor of plaintiff and against defendant MFG to the extent it allows compensatory damages to plaintiff in the sum of $227,854. We reverse the portion of the judgment in favor of plaintiff and against MFG that awarded punitive damages in the sum of $500,000. We affirm the judgment on the verdict finding in favor of plaintiff on the counterclaim. Thus Midland Illinois and MFG are jointly liable to plaintiff in the sum of $227,854.

The parties do not dispute that Midland Illinois is a second-level subsidiary in a structure of corporations of which MFG is the ultimate holding company and that the companies have interlocking directors and interlocking officers. Gray was the president and chief operating officer of MFG and an officer or director of many subsidiaries until his death. The parties also agree that plaintiff's employment contract was based partly upon his apparent acceptance of an offer contained in a February 23, 1993, letter from Gray, which stated that plaintiff would be the president of Midland Illinois, vice president of another subsidiary, and director of both.

Gray's letter stated plaintiff "will be employed under an agreement *for a 2[-year period with aut]*omatic *renewal periods of a like duration, assuming neither party gives notice of nonrenewal 90 days prior to an expiration date.*" (Emphasis added.) The parties do not dispute that the employment was terminated by a letter from Gray and hand-delivered to plaintiff on February 23, 1995, stating plaintiff's employment was terminated effective February 28, 1995.

The contract of employment was also based upon an agency agreement entered into between MFG and plaintiff on June 1, 1993, which provided plaintiff's agency could be terminated regardless of time frame upon plaintiff's fraud or breach of the agency agreement. Accordingly, Midland Illinois was clearly in breach of its contract with plaintiff when plaintiff was discharged unless Midland Illinois proved fraud or breach of the agreement between the parties.

Evidence plaintiff had breached his contract of employment by poor performance came from testimony (1) he had written insurance policies for long-haul carriers and those using leased equipment when directed not to do so; (2) he had failed to collect some premiums; and (3) some record keeping under his responsibility was very poor. However, no finding of poor performance had been placed in a personnel record. Moreover, MFG had made a profit of $312,000 in 1994 after starting from scratch and its governing board had given other high-level MFG employees pay raises after 1994. Some evidence was presented that plaintiff had worked hard.

The jury properly could have concluded plaintiff had not breached his employment contract. As Midland Illinois undisputedly breached the employment contract if plaintiff's conduct did not justify his firing, the judgment for plaintiff and against Midland Illinois was proper. Similarly, for the same reasons, the judgment on the verdict for plaintiff on Midland Illinois' counterclaim was supported by the evidence.

■ The circuit court properly refused to permit defendants to present in evidence portions of Gray's discovery deposition concerning his

reasons for terminating plaintiff. Supreme Court Rule 212(a) provides that discovery depositions may be offered into evidence only (1) to impeach the deponent by a witness, (2) as an admission of a party opponent, (3) if admissible as an exception to the hearsay rule, and (4) for any purpose for which an affidavit can be used. 134 Ill. 2d R. 212(a). Here, Gray's deposition testimony did not come within the purview of the rule. He was an agent of the party offering the testimony and the testimony was offered to prove the reasons the defendant terminated plaintiff.

■ We find no error in the jury's award to plaintiff of $100,000 in regard to his stock. Gray's letter to plaintiff of February 23, 1993, stated that plaintiff would be provided a 15% stock interest in Midland Illinois and a 10% interest in another subsidiary. The letter also provided that "[i]n the event you resign or change positions within our company, we want the right to acquire your ownership on an agreed formula." The termination letter of February 23, 1993, stated that "[w]e will acquire" plaintiff's aforementioned stock "based on three (3) times the average annual earnings before taxes of those operations."

Both plaintiff and Midland Illinois presented evidence of the value of plaintiff's stock in Midland Illinois and the other subsidiary using the formula of the earnings of those companies reduced by plaintiff's percentage of interest. Plaintiff's evidence was based entirely on the earnings for 1994 and arrived at the sum of approximately $157,000. The defense testimony was based on the earnings for both 1993 and 1994 and arrived at the figure of approximately $83,000.

Midland Illinois recognizes that plaintiff would have a right to evaluation and reimbursement for his stock under section 12.55 of the Business Corporation Act of 1983 (805 ILCS 5/12.55 (West 1994)), but contends here the lack of a definite agreement for repurchase of shares negates any right of plaintiff to make the value of the shares an element of damages in this case. However, Midland Illinois, through Gray's letter of termination of employment, recognized the deprivation to plaintiff of the value of his shares in the two corporations, and the formula suggested by Gray was used by the witnesses for both sides with the only difference being in regard to the time frame to determine the average earnings.

Midland Illinois maintains the jury was required to adopt either plaintiff's theory that only one year's earnings should be considered or Midland Illinois' theory of two years. Plaintiff makes various arguments that Midland Illinois has waived any objection that can now be made to the award. In any event, evidence was presented that Midland Illinois no longer has assets. The award of the jury for loss of stock

value was closer to Midland Illinois' theory than that of plaintiff. Plaintiff was entitled to an award for loss of stock value and we conclude the instant award was justified.

We now come to the difficult question of whether MFG can be liable for tortious interference with plaintiff's contract of employment. MFG presents two theories as to why it should not be subject to such liability. One theory starts with the rule that a party to a contract cannot be subject to liability for tortious interference with its own contract. The other theory of MFG is that, under the circumstances, it was privileged to influence the breach of plaintiff's contract of employment.

■ Plaintiff does not dispute the basic rule that an entity cannot be liable in tort for interfering with its own contract. To be tortious, the interference must come from an entity not a party to the contract. *Loewenthal Securities Co. v. White Paving Co.*, 351 Ill. 285, 184 N.E. 310 (1932); *Douglas Theater Corp. v. Chicago Title & Trust Co.*, 288 Ill. App. 3d 880, 884, 681 N.E.2d 564, 567 (1997); *Schuler v. Abbott Laboratories*, 265 Ill. App. 3d 991, 994, 639 N.E.2d 144, 149 (1993). Here, MFG, the defendant to count II, was not the same entity, in the strict sense, as Midland Illinois, which had entered into the employment contract with plaintiff.

■ Under the theory interjected in the case under count VI, MFG was held to be liable for the breach of plaintiff's employment contract because MFG was the alter ego of Midland Illinois. In an opinion by Justice Underwood, the Supreme Court of Illinois has explained:

"Generally, before the separate corporate identity of one corporation will be disregarded and treated as the alter ego of another, it must be shown that it is so controlled and its affairs so conducted that it is a mere instrumentality of another, and it must further appear that observance of the fiction of separate existence would, under the circumstances, sanction a fraud or promote injustice. *People ex rel. Scott v. Pintozzi* (1971), 50 Ill. 2d 115, 128-29[, 277 N.E.2d 844]; *Dregne v. Five Cent Cab Co.* (1943), 381 Ill. 594, 603-04[, 46 N.E.2d 386]; *Superior Coal Co. v. Department of Finance* (1941), 377 Ill. 282, 294[, 36 N.E.2d 354]; see generally Annot., 38 A.L.R.3d 1102 (1971)." *Main Bank of Chicago v. Baker*, 86 Ill. 2d 188, 205, 427 N.E.2d 94, 101 (1981).

■ Here, the interlocking relationship among MFG, Midland Illinois, and other subsidiaries of a two-layer level was clearly enough to treat MFG as the alter ego of Midland Illinois. On this basis, MFG was held liable on the contract of employment for its breach. Permitting plaintiff to deem MFG the alter ego of Midland Illinois to recover against MFG for breach of the contract but to treat MFG as a sepa-

rate entity so as to recover for tortious interference with the employment contract and to recover punitive damages would appear to be unfair. However, plaintiff calls our attention to authority which he maintains indicates a corporation cannot use the piercing of the corporate veil to its own interest. He cites the following:

> " 'Generally, the corporate veil is never pierced for the benefit of the corporation or its stockholders ***.' (18 Am. Jur. 2d *Corporations* § 45, at 846 (1985).) And, as another source, in noting that reverse piercing (where the parent company asserts that the subsidiary is not really a separate entity) is not favored, states: '[T]he rules relating to piercing of the corporate veil are designed to protect those relying on the existence of a distinct corporate entity ***.' 18 C.J.S. *Corporations* § 12, at 282 (1990)." (Emphasis added.) *In re Rehabilitation of Centaur Insurance Co.*, 158 Ill. 2d 166, 173-74, 632 N.E.2d 1015, 1018 (1994).

■ Plaintiff also points out the Supreme Court of Illinois also held that the Illinois Department of Insurance, as rehabilitator for an insolvent insurance company, had no right to proceed against the parent company of the insurance company to satisfy unpaid claims on the theory the parent company was the alter ego of the insolvent insurance company. *Centaur Insurance Co.*, 158 Ill. 2d at 174, 632 N.E.2d at 1018. We recognize that, under the authorities cited, MFG could not have interjected the theory of piercing the corporate veil between MFG and Midland Illinois, but once plaintiff interjected the theory into the case, he had to live with the consequences.

We have been unable to find a case where the same entity has been held liable on a contract for its breach and also liable for the tort of interfering with the contract. At oral argument, plaintiff was unable to cite any such case to us. To so hold here would make MFG liable for inducing the breach of a contract to which it was constructively a party. Accordingly, the claim of plaintiff against MFG for unlawful interference with his contract with Midland Illinois failed as a matter of law.

MFG also maintains any interference with plaintiff's employment contract chargeable to it was privileged because it was done to protect its interests in Midland Illinois. *HPI Health Care Services, Inc. v. Mt. Vernon Hospital, Inc.*, 131 Ill. 2d 145, 159, 545 N.E.2d 672, 678 (1989), involved a situation where firms advising an insolvent hospital advised the hospital not to pay a certain creditor while paying other creditors. The Supreme Court of Illinois held that creditor had no tort action against the advisors for unlawful interference with the contract between the hospital and its creditors. The court noted that no contention was made that the advisors' action was illegal, motivated by a

desire contrary to the interest of the hospital, for the personal gain of the advisors, or intended to harm the supplier creditor. Under those circumstances, the conduct of the advisors was deemed privileged. See also *Swager v. Couri*, 77 Ill. 2d 173, 395 N.E.2d 921 (1979).

Because of our determination, plaintiff cannot recover against MFG on count II based on its contention MFG was the alter ego of Midland Illinois. We need not decide whether plaintiff is also barred as to count II because MFG's conduct was privileged. For the same reason, we need not decide whether the circuit court erred in instructing the jury on the question of privilege or in permitting an award of punitive damages.

As we have indicated, we affirm the portion of the judgments in favor of plaintiff and against defendant Midland Illinois and MFG in the sum of $227,854 each, as a joint liability of those defendants. We reverse the portion of the judgment in favor of plaintiff and against MFG for $500,000 as punitive damages.

Affirmed in part and reversed in part.

GARMAN, P.J., and STEIGMANN, J., concur.