SARA L. ELLIS, United States District Judge *950 After an explosion at its factory in July 2017, Plaintiff Grecian Delight Foods, Inc. ("Grecian") turned to its insurer, Defendant Great American Insurance Company of New York ("Great American"), for coverage. Great American used GM Consultant - USA LLC ("GMC"), and its chief executive officer, Raymond Pawlak, to help it in adjusting Grecian's claims. Having reached an impasse with respect to coverage determinations, Grecian filed this suit in state court against Defendants Great American, GMC, Pawlak, and Great American's adjuster assigned to the Grecian claim, Daniel Moore. Grecian brings claims for breach of contract, declaratory judgment, tortious interference, and bad faith against Great American. Grecian names the other defendants-GMC, Moore, and Pawlak-in claims asserting tortious interference with the insurance policy and Grecian's contract with a third party.
Great American removed the case to this Court based on the Court's diversity jurisdiction. While admitting that the joinder of GMC and Pawlak destroys diversity, Great American argued that Grecian fraudulently joined these parties solely to destroy diversity. Grecian now moves to remand the case, claiming that Great American cannot establish fraudulent joinder. Because Great American has not met the high burden required to show that Grecian's claims against GMC and Pawlak have no chance of success, the Court cannot find that Grecian fraudulently joined these defendants and so remands the case to the Circuit Court of Cook County because it lacks jurisdiction over the case.
BACKGROUND
Grecian, a Delaware corporation with its principal place of business in Elk Grove Village, Illinois, manufactures Mediterranean food products. Great American, with which Grecian has an insurance policy, is a New York corporation with its principal place of business in Cincinnati, Ohio. GMC is a Delaware limited liability company, made up of members who are citizens of Illinois, New York, and France. Pawlak, one of GMC's members and its chief executive officer, is a citizen of Illinois. Moore, an executive general adjuster for Great American, is a citizen of Ohio.
Grecian had a commercial property policy with Great American for the period from July 1, 2017 to July 1, 2018. The policy provides that Great American "will pay for direct physical loss of or damage to Covered Property shown in the Declarations caused by or resulting from any Covered Cause of Loss." Doc. 1-1 ¶ 39. The policy also provides that Great American "will pay for the actual loss of Business Income you sustain due to the necessary 'suspension' of your 'operations' during the 'period of restoration,' " id. ¶ 43, and extra necessary expenses incurred to avoid or minimize the suspension of business and continue operations.
On July 7, 2017, ammonia began leaking from the ammonia tank into the mechanical room at Grecian's Elk Grove Village facility. An individual detected the ammonia smell and reported it to Grecian management. Management evacuated the facility and called 911. About ten minutes later, an explosion occurred. No one was injured, but the facility suffered extensive damage. The explosion destroyed the facility's ammonia cooling system, which functioned as Grecian's central source of refrigeration and freezing. Grecian had to destroy any in-process products for food safety concerns and shut down production for approximately a week.
Grecian notified Great American of the explosion the day it occurred. The following day, Dale Vesta of Crawford & Company, *951 a Great American investigator, visited the facility and obtained information about the explosion. Great American then replaced Vesta with GMC and Pawlak. On July 10, Moore and Pawlak instructed Grecian not to disturb the accident scene until a Great American representative inspected the facility, causing Great American to only begin restoration efforts on July 18. On July 12, during a visit to the facility, Moore requested extensive information from Grecian and informed Steve Dimakos of Quantum Global Advisors LLC ("Quantum"), whom Grecian hired as its business income consultant, that Quantum would be on a "short leash." Id. ¶ 52. Moore and Pawlak also made clear that Great American might not cover expenses Quantum incurred to prepare Grecian's claims.
To continue operations, Grecian engaged with Aggreko LLC ("Aggreko"), which supplies temporary power generation and temperature control equipment, to use Aggreko's temporary refrigeration units while making permanent repairs to the cooling system. Aggreko evaluated Grecian's needs on July 7 and began staging and installing equipment on July 11. During the July 12 meeting, Moore and Pawlak met Aggreko representatives and became fully apprised of Aggreko's services and challenges it faced. Grecian then signed a good faith agreement with Aggreko on July 17 and a more detailed agreement on July 19 for use of the equipment. Great American did not assist Grecian in negotiating the contract. Grecian sent the contract to Moore and Pawlak on August 4. Neither objected to the contract's terms. But on October 23, 2017, Great American informed Grecian it believed Aggreko was overcharging Grecian by $ 200,000 and that Grecian lacked industry knowledge to make a fair contract. GMC and Pawlak acted to induce Great American not to pay the costs Grecian incurred and sought to unilaterally renegotiate the contract through audits of the contract. Grecian then requested additional information from Great American to understand its issues with Aggreko. Great American did not respond, while Grecian's payments to Aggreko accumulated. On December 15, Aggreko required Grecian to commit to paying $ 1,510,645.15 by December 29. A few days later, Aggreko threatened to pull its units for nonpayment if it did not receive payment for overdue charges by December 22 at 5 p.m. Grecian notified Great American of these threats and asked for immediate assistance. Great American sent a $ 1 million payment as a courtesy, with Grecian having to borrow money to pay the remainder. In January, with more overdue payments having accrued, Aggreko told Grecian it could pull the equipment at any time. Grecian again had to borrow money to pay Aggreko the January outstanding balance of $ 1.2 million.
On January 18, Great American, Grecian, and Aggreko met to discuss Aggreko's invoices. Moore asked Grecian and Aggreko to sign one-day nondisclosure agreements, but neither party did so. Great American reiterated its belief that Aggreko's services were overpriced, but Aggreko declined to renegotiate. Great American also refused to pay for any Aggreko invoices after December 29, 2017, which it considers the date the restoration period ended. Aggreko invoiced a total of $ 5,502,765.82 for providing cooling equipment to Grecian from July 2017 until its new ammonia system was functioning in February 2018. Great American only paid $ 3,099,199.84 of this amount. In July 2018, Great American demanded an appraisal of the extra expense loss Grecian incurred for Aggreko's services.
Aside from the Aggreko contract, Grecian incurred additional losses and submitted extensive documentation and partial proofs of loss to Great American. Instead of covering Grecian's entire requests, *952 Great American only paid small amounts of the requested sums. Great American also provided working statements of loss to Grecian, setting forth its position as to the covered claims under the policy. By February 8, 2018, Grecian completed replacement of the ammonia system. It submitted proofs of loss through July 2018. As of July 25, 2018, Grecian had documented the following breakdown of its total $ 26,764,620 loss: $ 8,983,003 in business income loss; $ 10,711,535 in extra expense loss; $ 6,671,582 in building and personal property loss; and $ 398,500 in loss data preparation costs. Great American had advanced $ 11,505,278.02. Combined with a payment Grecian received on a policy it had with Travelers Property and Casualty Insurance Company, $ 12,669,506.98 of Grecian's claimed loss remained unpaid by Great American. Grecian believes the difference between its proof of loss and the paid amount can be attributed to: (1) deductions to the amount owed to Aggreko based on Great American's audit of the contract between Grecian and Aggreko; (2) deductions to costs based on Great American's application of the pollution exclusion of the policy; (3) deductions based on Great American's application of sublimits of liability; (4) deductions based on Great American's refusal to pay to replace damaged and inoperable ammonia piping; (5) Great American's refusal to pay claim preparation costs; and (6) deductions based on Great American's calculation of business income and its reduction of the restoration period.
LEGAL STANDARD
A defendant may remove a case filed in state court that could have been filed originally in federal court. 28 U.S.C. § 1441 ; Tylka v. Gerber Prods. Co. , 211 F.3d 445, 448 (7th Cir. 2000). The removing party bears the burden of demonstrating the propriety of removal, and any doubt regarding jurisdiction should be resolved in favor of remand. Schur v. L.A. Weight Loss Ctrs., Inc. , 577 F.3d 752, 758 (7th Cir. 2009). The Court may remand a case for lack of subject matter jurisdiction or, if timely raised, for failure to comply with the removal statutes. 28 U.S.C. §§ 1446, 1447(c) ; GE Betz, Inc. v. Zee Co. , 718 F.3d 615, 625-26 (7th Cir. 2013). A party seeking a different forum on the basis of fraudulent joinder "bear[s] a heavy burden" and must show that the plaintiff falsely pleaded certain jurisdictional facts or that the plaintiff has no chance of succeeding on its claim against the non-diverse defendants. Poulos v. Naas , 959 F.2d 69, 73 (7th Cir. 1992). To find fraudulent joinder based on the second prong, a court must conclude that, "after resolving all issues of fact and law in favor of the plaintiff, the plaintiff cannot establish a cause of action against the [non-diverse] defendant." Id. If the Court finds fraudulent joinder, the Court may disregard the non-diverse defendant's inclusion when analyzing diversity of citizenship, assume jurisdiction over the case, and dismiss the non-diverse defendant. Morris v. Nuzzo , 718 F.3d 660, 666 (7th Cir. 2013).
ANALYSIS
Great American and Grecian disagree on the viability of Grecian's tortious interference claims against GMC and Pawlak, whose presence as defendants destroys diversity unless the Court finds Grecian fraudulently joined them to the action. Great American argues that no reasonable probability exists that Grecian can succeed on its claims against GMC and Pawlak. The Court will grant the motion to remand on this prong only if there is no chance that Grecian can succeed on its claims against GMC and Pawlak. Poulos , 959 F.2d at 73. Several courts have found that the fraudulent joinder standard "is even more favorable to the plaintiff than the *953 standard for ruling on a motion to dismiss under" Rule 12(b)(6). Schur , 577 F.3d at 764 ; Hartley v. CSX Transp. Inc. , 187 F.3d 422, 424 (4th Cir. 1999). In conducting its analysis, the Court looks to Illinois law to determine whether Grecian has any reasonable probability of success against GMC and Pawlak. Schur , 577 F.3d at 764.
I. Viability of Tortious Interference Claim in Insurance Context under Illinois Law
First, Great American argues that Grecian's tortious interference claims against GMC and Pawlak are not viable because Grecian has merely recast allegations of Great American's alleged bad faith breach of contract into tortious interference to avoid the fact that Illinois does not recognize an independent bad faith tort claim in first-party property insurance disputes. See Cramer v. Ins. Exch. Agency , 675 N.E.2d 897, 904, 174 Ill. 2d 513, 221 Ill.Dec. 473 (1996). Illinois law provides a statutory remedy, found in section 155 of the Illinois Insurance Code, 215 Ill. Comp. Stat. 5/155, for recovery of attorney's fees and extracontractual damages if an insurer's actions with respect to a claim made under a policy are "vexatious and unreasonable." 215 Ill. Comp. Stat. 5/155 ; Cramer , 221 Ill.Dec. 473, 675 N.E.2d at 902. This statute, "while not the exclusive remedy for tortious conduct by an insurer, essentially substitutes for a separate tort of 'bad faith.' " W. Howard Corp. v. Indian Harbor Ins. Co. , No. 1:10-CV-7857, 2011 WL 2582353, at *3 (N.D. Ill. June 29, 2011). Great American claims no court would recognize a tort claim for bad faith conduct against an agent of Great American, where Illinois does not recognize that claim against an insurer. See Schwartz v. State Farm Mut. Auto. Ins. Co. , 174 F.3d 875, 878-79 (7th Cir. 1999) (refusing to allow bad faith tort action against agent of insurer under Indiana law, noting that the plaintiffs "have not cited a single case from any jurisdiction, let alone Indiana, which has recognized individual liability for bad faith denial of an insurance claim"). Grecian argues, however, that Great American reads Cramer too narrowly and that Cramer does not preclude a separate tort such as Grecian has alleged here.
In Cramer , the Illinois Supreme Court stated:
[A]n insurer's conduct may give rise to both a breach of contract action and a separate and independent tort action. Mere allegations of bad faith or unreasonable and vexatious conduct, without more, however, do not constitute such a tort. Courts therefore should look beyond the legal theory asserted to the conduct forming the basis for the claim. In cases where a plaintiff actually alleges and proves the elements of a separate tort, a plaintiff may bring an independent tort action, such as common law fraud, for insurer misconduct.
Cramer , 221 Ill.Dec. 473, 675 N.E.2d at 904. Section 155 preempts a tort claim that "essentially is based on an insurer's failure to pay amounts purportedly due under an insurance contract." W. Howard , 2011 WL 2582353, at *4 ; see also Cook ex rel. Cook v. AAA Life Ins. Co. , 13 N.E.3d 20, 33, 2014 IL App (1st) 123700, 382 Ill.Dec. 607 (2014) (finding ICFA claim preempted by section 155 ). But where the plaintiff alleges the elements of a separate tort related to insurer misconduct, the claim is not preempted. Cramer , 221 Ill.Dec. 473, 675 N.E.2d at 904. At least one Illinois Appellate Court, albeit in an unpublished decision, has found that a plaintiff properly stated a tortious interference with contract claim and that section 155 did not preempt this independent tort. See Gardner Denver, Inc. v. Nat'l Indem. Co. , 2015 IL App (4th) 140713-U, ¶¶ 36-37, 2015 WL 2454059. Thus, Cramer and its progeny suggest that Grecian may pursue a separate *954 tortious interference with contract claim that does not depend solely on "allegations of bad faith or unreasonable and vexatious conduct." Cramer , 221 Ill.Dec. 473, 675 N.E.2d at 904. The Court proceeds to determine if Grecian has alleged such a separate claim in its complaint.
II. Sufficiency of Tortious Interference Allegations
To state a claim for tortious interference with contract, Grecian must allege (1) the existence of a valid and enforceable contract between it and another; (2) GMC and/or Pawlak's awareness of the contract; (3) GMC or Pawlak's intentional and unjustified inducement of a breach of that contract; (4) a subsequent breach of the contract by the other, caused by GMC or Pawlak's conduct; and (5) damages. HPI Health Care Servs., Inc. v. Mt. Vernon Hosp., Inc. , 545 N.E.2d 672, 676, 131 Ill. 2d 145, 137 Ill.Dec. 19 (1989). Here, Grecian claims GMC and Pawlak interfered with two contracts: the insurance policy between it and Great American and the contract between it and Aggreko. Great American claims that neither of these contracts provides a basis for Grecian's tortious interference claims.
A. Interference with the Aggreko Contract
As for the alleged interference with the Aggreko contract, Great American claims that Aggreko, and not Grecian, must have breached the contract for a claim to stand and that here Aggreko never breached. Great American cites to Grund v. Donegan , 700 N.E.2d 157, 160, 298 Ill. App. 3d 1034, 233 Ill.Dec. 56 (1998), for support. In Grund , the court noted that the plaintiff's complaint did not allege a breach of contract by the third party and so did not state a claim for tortious interference with contract. Id. But Grund also did not include any allegations of breach by the plaintiff and so the court did not have occasion to consider whether such a breach would give rise to a tortious interference claim. But see George A. Fuller Co. v. Chi. Coll. of Osteopathic Med. , 719 F.2d 1326, 1330-31 (7th Cir. 1983) (discussing parties' dispute over whether inducing conduct had to be directed at the third party or plaintiff and concluding that "[u]nder Illinois law, liability for tortious interference may only be premised on acts immediately directed at a third party which cause that party to breach its contract with the plaintiff").[1] Other courts have concluded that actions by the defendant that keep the plaintiff from performing the contract can give rise to a tortious interference with contract claim. See Freight Handler Enters., Inc. v. Advantage Logistics Midwest, Inc. , No. Civ.A. 05 C 4813, 2005 WL 3180149, at *3 (N.D. Ill. Nov. 23, 2005) ("[L]iability for interference with conduct may arise where defendant's conduct 'made it impossible' for plaintiff to retain a contract with third parties." (citation omitted) ); Havoco , 971 F.2d at 1344 (concluding that verdict could be sustained based on conduct that prevented the plaintiff from performing the contract); Scholwin v. Johnson , 498 N.E.2d 249, 255, 147 Ill. App. 3d 598, 101 Ill.Dec. 67 (1986) ("While this statement of the necessary elements seems to require inducement of the third party to breach the contract, we *955 are persuaded that the scope of the cause of action is broader and encompasses the situation in which the defendant prevents the plaintiff from performing the contract and, as a result, he is unable to require the third party to perform."). Thus, a question at least exists as to whether a tortious interference claim may lie where the plaintiff breached the contract. This leaves the Court to conclude that the fact that Grecian claims that it, and not Aggreko, breached the contract does not mean Grecian could not succeed on its tortious interference claims related to that contract. Scholwin , 101 Ill.Dec. 67, 498 N.E.2d at 255-56.
Great American argues another problem exists because Grecian claims it breached the contract by making late payments to Aggreko, not that performance became impossible. Great American claims that these late payments do not amount to a breach but rather that the alleged conduct only made the contract more burdensome or expensive. Some cases interpreting Illinois law have suggested that interference that caused a plaintiff's performance to be "more expensive or burdensome" cannot support a tortious interference with contract claim. See George A. Fuller Co. , 719 F.2d at 1330 & n.1 ("Absent persuasive indicia that the Illinois Supreme Court would extend the action for international interference with contract to cover instances of mere hindrance or increased burden, we will not do so."); Catapult Commc'ns Corp. v. Foster , No. 06 C 6112, 2010 WL 3699924, at *3 (N.D. Ill. Sept. 13, 2010) (collecting cases). But Scholwin , decided after George A. Fuller Co. , at least cited Restatement (Second) of Torts § 766A as persuasive authority for extending tortious interference claims to conduct preventing the plaintiff from performing the contract. 101 Ill.Dec. 67, 498 N.E.2d at 255. And § 766A also applies to conduct "causing [the plaintiff's] performance to be more expensive or burdensome." Id. (citing Restatement (Second) of Torts § 766A ). Although Scholwin did not address the issue, the Seventh Circuit in at least one case has noted that Scholwin adopted § 766A and, in doing so, quoted the entire language of § 766A, including the language about expense and burden, in its opinion. See Havoco , 971 F.2d at 1344. The Illinois Supreme Court does not appear to have directly addressed this question. Even if the imposition of greater expense or burden does not support a tortious interference with contract claim, Grecian has at least alleged a plausible breach based on late payments in violation of the contract. Therefore, the Court cannot conclude that Grecian has no reasonable possibility of success on its claims with regard to the Aggreko contract because, according to Great American, the performance of the contract only became more expensive or burdensome.
Next, Great American challenges the intentional inducement element of the claim, arguing that Grecian has not alleged "some active persuasion, encouragement, or inciting that goes beyond merely providing information in a passive way." Webb v. Frawley , 906 F.3d 569, 579 (7th Cir. 2018) (quoting In re Estate of Albergo , 656 N.E.2d 97, 103, 275 Ill. App. 3d 439, 211 Ill.Dec. 905 (1995) ). It also claims GMC and Pawlak must have interfered with a third party, see id. at 578 n.4, and that here, Grecian's allegations that GMC and Pawlak induced Great American to fail to make timely payments do not suffice. While Grecian's allegations are somewhat thin on this issue, drawing all inferences in its favor, the Court cannot find the facts and law on intentional inducement preclude the claim against GMC and Pawlak.
Finally, Great American contends that because the Aggreko contract did not have a definite duration and either party could terminate it at will, that contract cannot serve as a basis for a tortious interference *956 claim. This is yet another undecided issue, on which courts interpreting Illinois law disagree. See id. at 580-81 (collecting cases supporting both viewpoints in the employment context). The possibility remains that a plaintiff can base a tortious interference with contract claim on an at-will agreement. Id. Therefore, the Court cannot find that Grecian cannot state a tortious interference with contract claim as a matter of law or based on the alleged facts against GMC and Pawlak with respect to the Aggreko contract.
B. Interference with the Policy
While the Court's analysis with respect to the Aggreko contract could end the Court's fraudulent joinder analysis, for purposes of completeness, the Court also discusses Grecian's claims of tortious interference with the policy. Great American argues that Grecian cannot establish the first element of the claim, that a contract exist between Grecian and another , because GMC and Pawlak acted as Great American's agents. "[A]n entity cannot be liable in tort for interfering with its own contract." Knickman v. Midland Risk Servs.-Ill., Inc. , 700 N.E.2d 458, 461-62, 298 Ill. App. 3d 1111, 233 Ill.Dec. 153 (1998). Instead, "the interference must come from an entity not a party to the contract." Id. , 233 Ill.Dec. 153, 700 N.E.2d at 462. This principle extends to agents of one of the contracting parties. See Quist v. Bd. of Trs. of Cmty. Coll. Dist. No. 525 , 629 N.E.2d 807, 811-12, 258 Ill. App. 3d 814, 196 Ill.Dec. 262 (1994). But an agent only has a conditional privilege against a tortious interference with contract claim, with the privilege overcome by allegations that "the agent's actions in interfering with the principal's contract are unjustified or malicious, such as where the agent's conduct is totally unrelated or antagonistic to the principal's interests." Storm & Assocs. v. Cuculich , 700 N.E.2d 202, 210, 298 Ill. App. 3d 1040, 233 Ill.Dec. 101 (1998) ("The proposition that an agent can never be held liable for wrongfully interfering with his principal's contracts is far too broad."). Malicious, in this context, "simply means that the interference must have been intentional and without justification." HPI Health Care Servs., Inc. , 137 Ill.Dec. 19, 545 N.E.2d at 677. To overcome the privilege, "the plaintiff must set forth factual allegations from which it can reasonably be inferred that the defendant's conduct was unjustified" or malicious. Id.
Here, Grecian does refer to "Great American and its agents" in the complaint. Doc. 1-1 ¶¶ 4-10, 12. But Grecian never identifies GMC or Pawlak as Great American's agent, contending in the motion to remand that GMC and Pawlak acted as independent contractors. The distinction has no relevance, however, because a consultant's privilege also exists to shield a consultant from a tortious interference with contract claim where he has "offer[ed] good-faith advice to a client" and the "client act[s] on that advice to the harm of a third person." J.D. Edwards & Co. v. Podany , 168 F.3d 1020, 1022 (7th Cir. 1999) (collecting Illinois state cases). The consultant's privilege is similarly qualified, "limited to advice given with the scope of the consultant's engagement" and forfeited "if the consultant does not give honest advice-if he uses his engagement to hurt other people exclusively for his own benefit (or out of dislike of his victim)." Id. at 1022-23. In Gardner Denver , the court noted that allegations that an agent refused to follow the terms of a settlement agreement sufficed to overcome the conditional privilege. 2015 IL App (4th) 140713-U, ¶ 27. Grecian appears to make a similar claim here: that GMC and Pawlak's actions and reasons for encouraging Great American to breach the insurance policy were frivolous and against the policy's terms. Although Grecian may not succeed in overcoming the privilege, the Court cannot find it has no chance of success to do so.
*957 Great American also argues that Grecian has not sufficiently alleged GMC and Pawlak's intent to induce Great American to breach the policy. As the Court already discussed in connection with the Aggreko contract, the Court cannot find the facts and law on intentional inducement preclude the tortious interference claim against GMC and Pawlak with respect to the policy. While Grecian may need to supplement its allegations in an amended complaint, Great American has not met its high burden of showing that Grecian has fraudulently joined GMC and Pawlak. Because complete diversity does not exist, the Court remands this case to the Circuit Court of Cook County.
CONCLUSION
For the foregoing reasons, the Court grants Grecian's motion to remand [17]. The Court remands this case to the Circuit Court of Cook County.

Courts appear to interpret George A. Fuller Co. as both preventing tortious interference claims where the plaintiff is the one alleged to have breached, see Troya Int'l, Ltd. v. Bird-X, Inc. , No. 15 C 9785, 2017 WL 6059804, at *7 (N.D. Ill. Dec. 7, 2017), and allowing such claims as well, Havoco of Am., Ltd. v. Sumitomo Corp. of Am. , 971 F.2d 1332, 1344 (7th Cir. 1992) (relying on George A. Fuller Co. 's statement that the breach element requires "either a breach of contract, termination of the contractual relations, or rendering performance impossible" (quoting George A. Fuller Co. , 719 F.2d at 1331 ) ).